VINCENT MOFFAT, Claimant, *v.* THE STATE OF NEW YORK.

Claim No. 15586.

(Court of Claims, June, 1921.)

Negligence — when state liable for — power of legislature to waive state's immunity — convict labor — State Constitution, art. III, § 29 — Code Civ. Pro. § 264 — Prison Law, §§ 170–177.

The state is not liable for injuries arising from the negligence of its officers and agents, unless such liability has been assumed by constitutional or legislative enactment.

Immunity from such liability rests upon grounds of public policy and is not waived by section 264 of the Code of Civil Procedure.

The right and power of the legislature to waive the state's exemption from liability and to prescribe the conditions of recovery, though wide, are not confined to the principles defining liability in actions for tort between individuals,

The constitutional provision (State Const. art. III, § 29) which, after prohibiting contract prison labor, declares that it " shall not be construed to prevent the Legislature from providing that convicts may work for, and that the products of their labor may be disposed of to, the State or any political division thereof, or for or to any public institution owned or managed and controlled by the State, or any political division thereof," permits legislation for the employment of convicts in work " for the state " or any political division thereof, or " for any public institution owned, managed or controlled by the state," and sections 170–177 of the Prison Law are consonant with the said constitutional provision.

Claimant, a journeyman electrician, and several other prisoners in Sing Sing prison, were employed under the immediate direction and control of the chief engineer of the prison in work on the slate roof of a building in the prison yard. When claimant was about to strike with his hammer the screw which passed through the center of an insulator knob which he had been told by the chief engineer to put on the roof, one of the slates under his foot gave way, the hammer struck the knob which split and a part of it struck claimant's left eyeball, permanently impairing its usefulness. The evidence did not disclose whether the slate broke or was dislodged, and there was no testimony indicating any detail in which the state or its employees failed in reasonable care, nor was claimant guilty of contributory negligence. *Held,* that the injury sustained by him was the result of " pure accident " for which there could be no recovery, and the claim will be dismissed.

CLAIM against the state for negligence. Special claim statute.

William D. McNulty, for claimant.

Glenn A. Frank and Harry W. Ehle, Deputy Attorneys-General, for State of New York.

CUNNINGHAM, J. On April 9, 1915, and for some months previously, the claimant was a convict incarcerated in Sing Sing prison. He was a journeyman electrician and had worked for more than four years as an electrician's apprentice and helper before becoming a journeyman. Walter A. Neaffie at that time

was the chief engineer of the prison and the claimant and several other prisoners were employed in maintenance work under his direction and control. In the prison yard was a building with a slate roof, known as the sash and door factory. A wooden framework stood on the extreme end of the apex or ridge of the roof and consisted of two uprights, both standing exactly on the ridge about seven feet apart, supported on each side by braces to the roof. Sustained by said uprights, and extending from one to the other directly above and parallel to the ridge, were three crosstrees, each of them containing about eight wooden pins about eight inches apart, with insulators, each pin supporting an electric wire. These wires were part of the electric equipment of the institution, and were insulated and charged at that time with 110 volts. The first crosstree was about two and a half feet from the roof, the second about two and a half feet above the first, and the third about one foot above the second. The eaves of the building were about eighteen feet from the ground at each side. Some of the slates of the roof were broken and some others were loose or missing.

On the date mentioned, Neaffie pointing to the roof said to the claimant: " You go up on the roof and put two insulator knobs and tie them wires up there," and the claimant answered: " How am I going to get up there?" Neaffie replied: " Go inside of the boiler room and take your ladder and get on the stairway to the edge of the roof and then get up there the best way that you can go up." The stairway mentioned was an outside stairway.

There was a tool box in the boiler room to which the claimant had free access, and any tools other than those in the box, needed or required by him at any time in the course of his work he could procure, and

it was customary for him to obtain, from Neaffie, upon request and the giving of a receipt for them.

Neaffie, after giving these directions to the claimant, paid no further attention to the matter, and gave the claimant no other orders or directions, but went elsewhere.

The claimant immediately procured from the tool box a hammer, screw-driver, porcelain knobs and screws, which he testified was the equipment proper for the work, and climbed to the roof in the manner Neaffie had suggested. When he reached the framework, he stood on his toes, held a knob with a screw through the centre of it upon the crosstree about six inches above his head, and was about to strike the screw with the hammer, to start it into the wood, when one of the slates under his foot gave away, the hammer struck the knob which split, part of the knob striking the claimant's left eye-ball, seriously injuring it and permanently impairing its usefulness. It is not clear from the evidence whether the slate broke or became dislodged. Moffat observed the condition of the roof and slates before he held the knob in position as described.

Chapter 609 of the Laws of 1918, which became a law May 10, 1918, is in the usual form of special claim statutes, and after conferring jurisdiction of this claim upon this court, directs award " for such sum as shall be just and equitable " if we find " that such injuries were caused through the fault, negligence and carelessness of the state, its officers or agents, and without fault, negligence and carelessness of said Vincent Moffat."

It is conceded, of course, that in the absence of the special statute quoted, the state would not be liable in this proceeding. The state is not answerable for injuries arising from the negligence of its officers and

agents unless such liability has been assumed by constitutional or legislative enactment.   It is true that for some time an impression prevailed that the state's immunity from liability for the tortious acts of its officers and agents had been waived generally by section 264 of the Code of Civil Procedure.   This view has been dissipated and all doubt resolved by the Court of Appeals.  *Smith* v. *State,* 227 N. Y. 405; *Konner* v. *State,* 227 id. 478.

" The exemption of the state from liability for the torts of its officers and agents does not depend upon its immunity from action without its consent, but rests upon grounds of public policy that no obligation arises therefrom." *Smith* v. *State, supra.*

This principle has been applied in various cases similar to the one at bar, and extended also to those agencies performing functions of the state.  *Lewis* v. *State,* 96 N. Y. 71; *Martin* v. *State,* 120 App. Div. 633; *Corbett* v. *St. Vincent's Industrial School,* 177 N. Y. 16; *Ackley* v. *Board of Education,* 174 App. Div. 44.

The right and power of the legislature to waive the state's exemption from liability and to prescribe the conditions of recovery are very wide and are not confined to the principles defining liability in actions for tort between individuals.  Thus in a recent case recovery was made conditional on establishment of the injury and of the extent of damage only, without necessity of any proof of negligence or freedom from contributory negligence.  *Munro* v. *State,* 223 N. Y. 208.   The gist of that case is found in the court's statement, " The basis for such allowance has been the moral obligation or the equity arising out of the facts."

In this case, the special statute quoted makes liability conditional. upon proof, (1), that claimant's " injuries were caused through the fault, negligence

and carelessness of the state, its officers or agents,''
and, (2), '' without fault, negligence and carelessness
of said Vincent Moffat.'' The determination, there-
fore, of liability depends upon the establishment of
these two conditions. They are questions of fact.

The claimant has argued with much earnestness
that the prison officials had no right to require Moffat
to do this class of work, under the provisions of the
Constitution and statutes. Const. art. III, § 29;
Prison Law, art. 7, § 171; Cons. Laws, chap. 43. We
are at a loss to know how this contention, if valid,
would aid the claimant. If the policy and course of
the prison officials were contrary to statutory pro-
visions and forbidden, they were unlawful and without
the scope of authority of the officials so acting. It
would seem that their acts in that event would not be
the acts of the state, nor of its agents or officers, *as
such,* and that the result would be to negative liability
rather than to impose it.

However, we have no doubt of the legality and
propriety of the action of the prison officials in thus
employing the claimant. The Constitution, article III,
section 29, after prohibiting contract prison labor,
provides: '' This section shall not be construed to
prevent the legislature from providing that convicts
may work for, and that the products of their labor may
be disposed of to, the State or any political division
thereof, or for or to any public institution owned or
managed and controlled by the State, or any political
division thereof.''

It is palpable that this provision permits legislation
for the employment of convicts in work '' for the
state '' or any political subdivision thereof, or '' for
any public institution owned, managed or controlled
by the state.'' The Prison Law, sections 170–177,
are consonant with this constitutional provision and

provide in detail for the employment of prisoners in harmony with it. Beyond cavil, the employment of prisoners in labor "for the state" or in the production "of useful products, articles and supplies needed and used in the said institutions," etc., is authorized by the statute. It is needless to quote the latter at length. Not only was the claimant's work strictly "for the state," and "for a public institution owned by the state," but it was directed to the production and continuance of a "supply" needed and used in the institution," to wit, a supply of electricity for light, and other purposes. It is true that the narrow construction of the term "supplies" urged by the claimant might add to the attractiveness of prison abode. No longer might prisoners be required to do the menial work of the institutions in the care of the building, grounds, cells, etc. These tasks employees of the state would do for them. But it would render prison administration absurd. There is no basis for the contention.

Nor have precedents treating "assumption of risk," or the "fellow servant rule" any application here. These principles have to do with the law of master and servant and have their basis in contractual relationship. Here no contractual or voluntary relationship existed, nor did the state and claimant stand in the position of servant and master. This proceeding is *sui generis*. It has its only basis in the special statute by which the state assumed liability on the conditions prescribed. Therefore, the distinctions made in various decisions to which our attention had been called, such as *Citrone* v. *O'Rourke Eng. Const. Co.,* 188 N. Y. 339, and *Kranz* v. *Long Island R. Co.,* 123 id. 1, are inapplicable. If Moffat's injuries were due to the negligence of the state, its officers or agents, and the claimant was free from contributory negli-

gence, he is entitled to an award, quite irrespective of various of the rules and principles which define and limit liability of master to servant.

*Nicholson* v. *Greeley Square Hotel Co.,* 227 N. Y. 345, is of little aid in this connection. That case merely determined that the issues of the defendant's negligence and of the decedent's contributory negligence, upon evidence, were for the jury. This court performs functions of both court and jury, and determines all issues of law and fact. There is no doubt that the questions involved here likewise are questions of fact.

We are unable to discern any negligence on the part of the state, its officers or agents. Their conduct lacked nothing in due and reasonable care and prudence. There is no testimony indicating any detail in which the state or its employees failed in reasonable care. The claimant himself testified that he had the very equipment he "was supposed to have" to do the actual work of attaching the knobs. He mentioned no device, structure or precaution for safety which was customary or feasible in such work, which was not available to him. Nowhere in the testimony is there any suggestion of anything which reasonably could have been done or furnished which would have protected the claimant. In the *Nicholson* case the facts were such that the court accurately said, "possible safe-guards readily suggest themselves." But here none of the witnesses suggested any, and the court cannot conceive of any reasonable device or safeguard which would have made the place of work safer. The court at the trial mentioned a safety belt. The claimant expressly repudiated the suggestion. It is true that the claimant's attorney in the course of argument vaguely suggested that "some kind of a small platform or scaffolding or construction of some kind" was

Court of Claims, June, 1921.        [Vol. 116.

necessary. But the testimony and the photographic exhibits indicate the doubtful practicability of any such structure. It is as likely that it would have impeded and interfered as that it would have aided in the work among the wires. But however that may be, the state and its representatives owed claimant due or reasonable care only. They were not obliged to furnish the best known or conceivable appliances or safeguards, but only such as were reasonably safe and suitable for the performance of the small task of installing the knobs and wires. They omitted nothing which reasonable care required. *Marsh* v. *Chickering,* 101 N. Y. 396.

Nor was the claimant guilty of contributory negligence. He went about the work according to instructions and as a reasonably careful and skilled electrical worker would do. In the light of his injury, methods by which he could have avoided it readily suggest themselves, but these come to mind after the event. He did nothing which reasonable care would preclude.

Although some slates were loose or broken we find as facts that it was not negligence, under the circumstances, for the state to require the claimant to perform this particular work on the roof, or contributory negligence for the claimant to do it in the way he attempted. It does not follow from the evidence that the roof was in a dangerous condition generally or at the place where the work was to be done. It is not unusual for a slate to break or become dislodged under such circumstances, in a roof which is in reasonably good repair. In any event, the claimant would be equally at fault with Neaffie. We repeat, however, that neither of them was unreasonably remiss.

In *Paul* v. *Consolidated Fire Works Co.,* 212 N. Y. 117, the court wrote: " In accidents of employment, especially where the injuries are serious, there is a

tendency always to impute blame to some one. The servant blames his master; the master attributes contributory negligence to his servant. We are apt to forget that accidents are not infrequent, for which no one is really to blame at all.''

The injury to the claimant was '' pure accident.'' It was one of that class of injuries which befall men when no one has failed in any reasonable requirement of care or prudence. For such an accident, however unfortunate, there can be no recovery.

The claim is dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.