## In re YODER.

### (District Court, E. D. Pennsylvania. February 11, 1904.)

### No. 1,695.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—WAGE EARNER.

   A man who owned a team, wagons, and a plow, with which he worked by the day for different employers as he could obtain work, earning usually from $9 to $15 per week, and working alone when he could not find work for his team, was not an independent contractor, but a wage earner, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4, cl. "b," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and not subject to be adjudged an involuntary bankrupt.

In Bankruptcy. On certificate from special referee.

Henry T. Williams and Stout & Kiser, for creditors.
Swartley & Bunting, for bankrupt.

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

J. B. McPHERSON, District Judge.   In this case the bankrupt filed an answer to the petition, averring that he is a wage earner, and therefore not liable to be adjudged an involuntary bankrupt.   The Act of July 1, 1898, c. 541, § 4, cl. "b," 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], exempts wage earners from involuntary proceedings; and section 1, cl. 27, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], defines a wage earner to be "an individual who works for wages, salary or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year."   The referee took testimony concerning the occupation of the bankrupt, and has found the facts to be as follows:

"At the date of the execution of said deed of conveyance the said Jacob Y. Yoder resided in the borough of Perkasie, Bucks county, in said district.   He was the owner of two horses, two wagons, one plow, and one cart, with which he did hauling by the day, at the rates of $3 and $4, according to the kind of work.   He was not regularly employed by any one person, but hauled logs, coal, manure, etc., for different people; and the period of his employment was generally brief, lasting from a day to a week.   He was also at times without work. His income varied from $9 to $15 per week, and sometimes fell as low as a dollar per week.   He employed no other person, but drove the team himself. The compensation received by him included pay for his own services and for the use of his team."

To this finding may be added the further fact that, when he was not employed as above stated, he worked by the day at whatever manual labor he could get to do.   Upon these facts, I think it is clear that the bankrupt was a wage earner, and not an independent contractor.   He was a servant hired by successive masters, and was always paid by the day, never by the job.   The fact that he used his horses and wagons in performing the services for which he was paid by the day does not seem to me of any special importance.   A carpenter or any other skilled mechanic employs tools—often his own tools—to assist him in earning his daily wages; and the bankrupt's horses and wagons stand, I think, in precisely the same category.   The words "wages or hire" have so nearly the same meaning, that it is not easy to discriminate between them; but it is not necessary to make the attempt in the present case, for certainly the compensation received by the bankrupt for the kind of work that he was doing must fall within the meaning of one or the other of these two words.   He was not an independent contractor, looking for his income to the profits that he might make by carrying out a contract for a lump sum, but was an ordinary day laborer, who did work with his hands, lifting logs, holding a plow, driving his team, and similar service, for which he was paid at a fixed rate by the day. I think, therefore, that he comes clearly within the exemption of section 4, and that the petition must be dismissed.

An order to this effect will be entered.