[S. F. No. 12069. In Bank.—December 18, 1926.]

## CALIFORNIA HIGHWAY COMMISSION, DEPARTMENT OF ENGINEERING, STATE OF CALIFORNIA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA and ROBERT SMITH, Respondents.

[1] PRISONERS—EMPLOYMENT ON HIGHWAYS—COMPENSATION FOR INJURIES.—A convict engaged in the performance of labor on the state highway, under the provisions of chapter 316 of the Laws of 1923, is an employee within the meaning of the constitution and the Workmen's Compensation Act.

[2] ID. — DEPRIVATION AND RESTORATION OF CIVIL RIGHTS — POWER OF LEGISLATURE.—The power to deprive a prisoner of his civil rights is one that resides in the legislature, and this power includes the corresponding power to restore them.

[3] ID.—CONVICT ROAD CAMP BILL—CONSTRUCTION OF.—The Convict Road Camp Bill (Stats. 1923, c. 316, p. 667), partially restores to convicts their civil rights and authorizes those who are afforded the privilege to enter into a contract of employment with the State Highway Commission, which entitles them to all the rights under the act, one of which is the benefits enjoyed by employees under the Workmen's Compensation Act.

[4] ID.—COMPENSATION — GIFTS — POWER OF LEGISLATURE—CONSTITUTIONAL LAW.—The legislature, having power to restore the suspended civil rights of a convict and to compensate him for the character of work provided by the Convicts Road Camp Bill, the sums provided for do not constitute a gift under section 34 of article IV of the constitution.

(1) Workmen's Compensation Acts, C. J., p. 48, n. 51; 32 Cyc., p. 316, n. 7. (2) 13 C. J., p. 914, n. 41. (3) 13 C. J., p. 923, n. 70; 36 Cyc., p. 1118, n. 23. (4) 36 Cyc., p. 885, n. 47.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission, awarding compensation for injuries to a convict engaged in highway work. Award affirmed.

The facts are stated in the opinion of the court.

2. See 21 Cal. Jur. 464.

Frank J. Creede, John T. Taheny and Paul F. Fratessa for Petitioners.

G. C. Faulkner and Milton L. Schmitt for Respondents.

THE COURT.—The following opinion prepared by Mr. Presiding Justice John F. Tyler of the district court of appeal, first district, division one, while sitting as a justice *pro tempore* of this court, is adopted as the opinion of the court:

"*Certiorari* to review an award of the Industrial Accident Commission. The facts are simple and without dispute. Robert Smith was convicted of the crime of burglary in the first degree. On March 10, 1922, he was sentenced to state prison for a term of from one to fifteen years. After serving the minimum sentence of one year the board of prison directors fixed his full sentence at five years. Shortly thereafter Smith made application and was granted permission to perform work on the public highways of the state under the direction of the State Highway Commission, he being eligible for this privilege. One of the benefits enjoyed by prisoners assigned to this character of work is a credit on the sentence to be served of two days for every one day of service at highway work. Shortly after his assignment to a prison camp, chapter 316 of the laws of 1923 became effective. This act provides, among other things, for the payment of compensation to a convict for work so performed by him, and Smith received the benefits conferred by the act. On March 17, 1924, while performing his duties as a road laborer he was struck by flying fragments from an accidental explosion of a blast, causing him various and serious bodily injuries, including injuries to both of his eyes. Smith was thereupon returned to the hospital at San Quentin for treatment. Upon his discharge from the hospital he remained within the prison until he was finally paroled on account of the severe injuries he had received. His credits materially reduced the term of his sentence which was completed on June 25, 1925, at which time he was finally discharged from custody. On August 25th, following, he filed an application with the Industrial Accident Commission for disability benefits by reason of his injuries. The state insurance fund was the insurance carrier and it was joined as a defendant in the proceeding. The Commission made an award in favor

of Smith. It provided for the payment to him forthwith of the sum of $791.52 as compensation for permanent disability, and beginning with March 10, 1926, the further weekly sum of $7.76 for a period of 138 weeks, and after the expiration of that time, the weekly sum of $4.79 for the remainder of his life. The award was made upon the theory that the relation of master and servant existed between California Highway Commission and the applicant by reason of the provisions of the act of 1923, providing for the payment by the Commission to convicts for services performed by them on the state highways. [1] The sole question, therefore, that is here presented is whether or not a convict engaged in the performance of labor on a state highway under the provisions of chapter 316 of the laws of 1923 is an employee within the meaning of the Constitution and the Workmen's Compensation Act. There is no provision either in the organic law or the statutes which directly includes or excludes him as such. The question, therefore, concerning what relationship exists between the state and an incarcerated convict so employed involves the proper construction to be given to the various laws relating to the subject. Section 673 of the Penal Code declares that a sentence of imprisonment in a state prison for a term less than life suspends all the civil rights of the prisoner so sentenced during his term of imprisonment. Section 1586 of the same code provides, in substance, that all convicts may be employed by authority of the prison directors under the charge of the wardens in performance of work for the state. Section 1588 charges the directors with the duty of requiring every able-bodied convict confined in a state prison to perform as many hours of faithful labor every day during the term of his imprisonment as shall be prescribed by the rules and regulations of the prison. Under this section, and before the passage of the indeterminate sentence law went into effect July 27, 1917, a convict who performed in a faithful manner the duties assigned to him was entitled as of right to fixed credit for good conduct. That plan was done away with by the legislature in adopting the plan of indeterminate sentence. (*In re Lee*, 177 Cal. 690, 695 [171 Pac. 958].) The board of prison directors thereafter, and solely as a prison regulation, adopted a plan by which, in the discretion of the board, deserving convicts were awarded credits.

(See *In re Mann,* 192 Cal. 165 [219 Pac. 71].)  It is manifest that under these sections the relationship of master and servant growing out of employment does not exist by implication for the reason that a convict confined within the prison walls is deprived of civil rights which his sentence suspends. Work performed by him is compulsory on his part and for it he receives no compensation.  The incapacity thus imposed upon felons resembles in some respects the ancient ban of *civiliter mortuus.*  (*Lewis* v. *State,* 96 N. Y. 71 [48 Am. Rep. 607] ; *Thompson* v. *Bronk,* 126 Mich. 455 [85 N. W. 1084].)  Under the provisions of the act of June 16, 1913 (Stats. 1913, p. 1048), a comprehensive parole system has been adopted under which a prisoner undergoing a first term of imprisonment other than for life is entitled, as a matter of right, upon the expiration of one year of his sentence, to make application for parole.  If parole be granted, a prisoner so paroled may contract for his employment, for by section 673 of the Penal Code, the board of prison directors may restore to such prisoner certain civil rights.  The scope and extent of the civil rights so restored are to be determined by the board at the time the parole is granted.  The question of what contractual rights a paroled prisoner may acquire under this act, however, is a purely academic one so far as this case is concerned, for the applicant had not been granted a parole thereunder at the time of his injury.  A discussion of the status of a paroled prisoner may be found in California Law Review, volume 2, page 401, and also in volume 5 of the same periodical at page 81.  We are not here directly concerned with this question.  In the year 1923 the legislature enacted what is generally known as the Convicts Road Camp Bill (Stats. 1923, chap. 316, p. 667). This act, among other things, provides that the State Highway Commission may employ or cause to be employed on the highways of the state certain convicts confined in the state prisons, and that when so employed such convicts shall receive a specified compensation not exceeding seventy-five cents net per day for their labor.  Provision is also made for authority of the prison directors to send the number of convicts to a prison camp as may be requisitioned by the Commission.  Under these conditions it is respondents' claim in support of the award that this act entirely changes the status of convicts who may be assigned to work on the

highways, and creates a new class of paroled prisoners between whom and the state a relationship is created, one of the incidents of which is a liability under the Workmen's Compensation Act for injuries. Respondents seem to concede that while engaged in work within the prison walls, this claimed relationship does not and cannot arise, but they insist that there is logically and necessarily a real, definite and distinct difference between the status of a convict within and one without the prison walls performing work upon the highways under the provisions of the act in question; that as to the latter it was the intention of the legislature as evidenced by the use in the act of the words 'employ' and 'employment' to authorize the State Highway Commission to enter into a contract of employment with convicts released for such work. We are of a like opinion. It may be conceded that one serving a sentence of imprisonment in a state prison is, in contemplation of law, a prisoner therein, as well when at work outside, under surveillance of the prison guards, as when confined within its walls (*Bradford* v. *Glenn,* 188 Cal. 350 [205 Pac. 449]). [2] The power, however, to deprive a prisoner of his civil rights is one that resides in the legislature. The power to thus deprive a prisoner of such rights must include the corresponding power to restore them. This we think was the manifest intention and purpose of the Convicts Road Camp Bill. The legislation is in keeping with the modern idea that it is for the benefit of society to rehabilitate those possessing criminal instincts, and one of the means employed is to partially restore to them their civil rights to contract for their labor as an encouragement to that end. [3] The act so expressly indicates, for it provides by the very first section thereof that the 'state highway commission may employ or cause to be employed, convicts confined in the state prisons, etc.' In the same section it is provided that all convicts so *employed* shall receive the compensation provided for, and such compensation is referred to as *earnings.* The word 'employ' has a definite legal meaning and legal terms when used in a statute are to be construed according to the context and the approved usage of language unless a different sense is obviously intended. (Civ. Code, sec. 13; *Fidelity & Casualty Co.* v. *Industrial Acc. Com.,* 191 Cal. 404 [43 A. L. R. 1304, 216 Pac. 578].) There is nothing contained in the statute

which indicates that a different meaning was intended. On the contrary, its manifest object was to authorize those who were afforded the privilege to enter into a contract of employment with the State Highway Commission to have restored to them the limited civil right which the reformative measure provides for. The statute as a whole should be liberally construed to carry out its beneficent purposes. (*Western Ind. Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721].) It was in evidence and it is not disputed that it was optional with prisoners as to whether they would accept this labor or not. They were at liberty to refuse it and in some instances it had been refused. Having accepted it, however, the applicant was entitled to all the rights under the act, one of which must be held to be the benefits enjoyed by employees under the Workmen's Compensation Act. [4] The legislature having the power to restore the suspended civil rights of a convict and having the further power to compensate them for the character of the work in question, it follows that the sums provided for do not constitute a gift under section 31 of article IV of the Constitution, as suggested by petitioners.

"We conclude, therefore, that under the terms of the Convicts Road Camp Bill the legislature intended to restore to a convict assigned to work upon the public highways such limited civil rights as are necessary to create the relation of master and servant between him and the State Highway Commission, and this being so, he must be held to be an employee within the meaning of the Workmen's Compensation Act. It follows that the applicant is entitled to all the benefits of this act and the Industrial Accident Commission was correct in so concluding.

"For the reasons given the award is affirmed."