## In re GAINFORT.
### No. 26698.

District Court, N. D. California, S. D.
May 11, 1936.

Norman Elkington, of San Francisco, Cal., for creditors.

John B. Ehlen, of San Francisco, Cal., for alleged bankrupt.

ROCHE, District Judge.

On motion to dismiss the second amended petition in involuntary bankruptcy, novel questions of manifest importance arise. The controversy is over the right to amend. The facts, as disclosed by both counsel, show that the alleged bankrupt at the time of the commission of the first of two acts of bankruptcy alleged, had been sentenced to San Quentin Penitentiary, and was living in a prison road camp, working on California state highways and earning $2.50 a day.

Does the Bankruptcy Act (11 U.S.C. A.) apply to convicts? Can a convict avail himself of defenses provided in the act? and if both of these questions are answered affirmatively, Is the bankrupt a wage earner within the terms of the act? Upon these issues the right to amend hinges. The questions, as so often is the disconcerting predicament, have never before been adjudicated in this jurisdiction.

I. Does the Act Apply to Convicts?

In England, it has been held that a convict can commit an act of bankruptcy and become subject to the English act. Ex parte Graves, L.R. 19 Ch.Div. 1, 5. Cf. outlaws: Hamlin v. Crossley, 8 A.&D. 677, 112 Eng.Rep. 995; Ex parte Burke, 16 W.Rob. 652; Ex parte Stoffel, 16 W. Rob. 237.

In America, however, there is no direct authority. Section 4a of the Bankruptcy Act, 11 U.S.C.A. § 22 (a), provides: "Any person [except certain corporations]" can become voluntary bankrupts, and section 4b, 11 U.S.C.A. § 22 (b), says: "Any natural person [except wage earners and farmers]" may be subjected to involuntary bankruptcy. Section 1 (19), 11 U.S.C.A. § 1 (19), defines persons:

"'Persons' shall include corporations * * * and officers, partnerships, and women, and when used with reference to the commission of acts which are herein forbidden shall include persons who are participants in the forbidden acts."

Thus the act refers to "any person" and to "any natural person." For an excellent discussion as to the limits of "natural person," see 10 Columbia Law Review 221.

There is no intent evidenced to exclude convicts from this comprehensive language. The status of felon should neither unduly work hardships, nor give undeserved advantages to the prisoner in relation to his activities with the outside world. The trend of the law is to lessen the severity and harshness of the common-law penalties in relation to convicts, their property and rights. California Highway Comm. v. Industrial Acc. Comm., 200 Cal. 44, 251 P. 808, 49 A.L.R. 1377; 2 Calif.L.Rev. 401; 5 Calif.L.Rev. 81.

The status of convicts in regard to civil rights in California is rather uncertain. Pen.Code Cal. §§ 673, 674; 2 Calif.L.Rev. 401; 5 Calif.L.Rev. 81. Be that as it may concerning the law pertaining to the rights and advantages of an imprisoned felon,

the cases certainly construe "civil death" in a manner that does not, as a general rule, deprive the creditors of a prisoner of the right to hold him to his obligations and liabilities through suit, attachment, and execution. It seems immaterial whether the acts giving rise to the obligations are committed within or without the prison walls. Emmanuel v. Sichofsky, 198 Cal. 713, 247 P. 205, 48.A.L.R. 580; In re Estate of Nerac, 35 Cal. 392, 95 Am.Dec. 111; Ex parte Graves, supra.

■ The type of action permitted under this latter rule is closely akin to involuntary proceedings under the Bankruptcy Act, which are also designed to protect the creditor. The justification for the one is equally a justification for the other. The common sense and just view of Lush, L. J., expressed in Ex parte Graves, supra, is most persuasive. No adequate or substantial reason can be perceived for drawing a distinction between convicts and ordinary persons in relation to the Bankruptcy Act. Convicts should not be allowed to employ their crimes as a shield against the just demands of creditors. There apparently are no differences in the American and English Bankruptcy Acts sufficient to distinguish Ex parte Graves, supra, and it should be the American rule. Considering the intent and spirit of the Bankruptcy Acts' provisions of involuntary proceedings, it would be circumventing and evading the act to allow convicts immunity by reason of their status. Therefore, it is held that the act applies to convicts, the issue at bar, however, only presenting for decision the question as to involuntary proceedings. As to voluntary bankruptcy, no opinion is expressed. See in general: Zollman, Bankrupts of Abnormal Status, 10 Col.L.Rev. 221.

## II. May A Convict Bankrupt Avail Himself of Defenses Under the Act?

A defense to involuntary proceedings is afforded a bankrupt by section 4a when he can prove he is a wage earner. Invoking this defense is closely analogous to convicts defending themselves in ordinary civil actions. See Castera v. Superior Court, 29 Cal.App. 694, 159 P. 735, holding that a convict can be sued, and that the suit is not held in abeyance by reason of his incarceration.

In discussing the case, Mr. H. A. Jones, in 5 Calif.L.Rev. at page 82, said: "The final question, can a convict defend himself if sued, was not decided by the court. Justice and reason, however, dictate that he should be allowed to defend a suit brought against him."

Under a New York statute, similar to the California Penal Code sections (sections 673, 674), the courts have held a convict may defend himself. Averey v. Everett, 110 N.Y. 317, 18 N.E. 148, 1 L.R.A. 264, 6 Am.St.Rep. 368; Bowles v. Habermann, 95 N.Y. 246.

"The tendency of modern juristic thought as found in the criminal statutes of some of our progressive states, is away from the harshness and barbarism of the Roman and Common Law. Civil death seems today a somewhat impracticable and doubtful penalty. It is hard to apply and often inflicts a greater injury upon the innocent family or relatives of the felon or even upon the state itself * * * than it does upon the convict. And finally, it is not in accord with the modern notion that imprisonment of a felon is rather a means for protecting society, than a punishment imposed upon the individual." 5 Calif.L.Rev. 81 at page 85.

All rights to appear in court and to defend himself are not lost to the convict. In federal courts, he may demand a speedy and immediate trial upon indictments pending during his imprisonment, and may, of course, defend himself. McCarty v. U. S. District Court (C.C.A.) 19 F.(2d) 462.

■ For the foregoing reasons, it is thought that if the bankrupt herein has any defenses, he may assert them. The state of the pleadings and the arguments have not permitted a decision of these issues prior to this time.

## III. Can A Convict Be A Wage Earner Within the Meaning of the Act?

Section 4b of the act (11 U.S.C.A. § 22 (b) reads: "Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil * * * may be adjudged an involuntary bankrupt."

If Gainfort is a wage earner, he defeats the involuntary proceedings. Assuming that he would still be able to go through voluntary bankruptcy, he is afforded no undue advantage by his status of convict other than incidentally through his opportunity to earn wages. It is a matter of Congressional policy to make this discrimination. Compare sections 4a

and 4b of the act. True that some convicts like Gainfort come within the exemption by being wage earners while others who are merely confined in the prison do not. But this is no more discriminatory nor arbitrary nor unreasonable than the effect of the act in ordinary life where some people come within the exemption and some without, merely through the accident of difference in occupations, though in all other respects and positions and earnings they may be absolutely equal.

█ What is the test to determine who is a wage earner?

Section 1 (27) of the act (11 U.S. C.A. § 1 (27): " 'Wage earner' shall mean an individual who works for wages, salary, or hire, at a rate of compensation not exceeding $1,500 per year." Each case is to be decided on its own facts. In re Glick (C.C.A.) 26 F.(2d) 398. While it is unnecessary by the terms of the statute for a person to be "chiefly" a wage earner as he must be "chiefly" a farmer, Virginia-Carolina Chemical Co. v. Shelhorse (C.C.A.) 228 F. 493, he must nevertheless have as his "paramount occupation" the earning of salary or wages. C. I. T. Corporation v. Sanderson (D.C.) 49 F.(2d) 937. The incidental earning of wages is insufficient to make one a wage earner. 1 Remington, Bankruptcy (1931) 114; Carpenter v. Cudd (C.C.A.) 174 F. 603, 20 Ann.Cas. 977; In re Naroma Chocolate Co. (D.C.) 178 F. 383. And it was said: "It must be evident to every reasoning person that when Congress used the words 'wage earner' it meant to designate a person who depended upon recompense for his own personal service for his or her support and maintenance, and that the test * * * is: Does the person claiming to be a wage earner depend first and foremost upon the return from his personal service for his maintenance and support? It means that the earning of wages—the doing of service for hire—is the paramount occupation of that person." Matter of Remaley, 23 A.B.R. 29, 35.

Summarizing, it is apparent that there are two indicia of wage earning: (1) Does the wage earner depend upon his wages for his subsistence? (2) Is wage earning his paramount occupation?

Turning to the status of Gainfort under the California law, the Department of Public Works "may employ or cause to be employed" upon state highway work as many convicts as are needed and are available. These convicts live in prison road camps. Their "pay" is not to exceed $2.-50 a day, out of which comes their maintenance (food, medicine, etc.) while at camp, and their proportionate share of the camp's total expenses. The convict receives no cash but an "account" is set up. His "net credit" cannot exceed 75 cents a day. If he has dependents on state relief, two-thirds of his net credit every month is sent to them. If he has dependents not on relief, he has the option of sending them two-thirds of his net credit or keeping it for himself. If the convict is discharged while in a camp, he is paid his balance in cash. If he is returned to the prison and discharged from there, or paroled from camp, all his money is paid to the warden who pays it to the convict upon terms decided by the order of the board of prison directors. Cal.Gen.Laws (Deering, 1935) Act 1677, § 1.

His status, in practical operation, seems little different than that of a laborer in a "company" camp, who must trade at a "company" store on credit, and is paid his wages less the amount of maintenance, etc.

The California Supreme Court took a liberal view of the rights of a convict under this set-up in the case of California Highway Comm. v. Industrial Acc. Comm., supra, and allowed a convict to receive compensation as an "injured employee" from the state workmen's compensation fund for injuries received at a road camp. Such a holding did not meet with legislative approval, and in 1927 section 9 was added to the Prisoners' Road Camp Bill:

"This Act is not intended to restore, in whole or in part, the civil rights of any convict * * * and shall not be so construed. No convict so used on the state highway * * * shall be considered as an employee or be employed by the state highway commission, nor shall any such convict come within any of the provisions of the workmen's compensation, insurance and safety act of 1917, or be entitled to any benefits thereunder whether on behalf of himself or that of any other person." Cal.Gen.Laws (Deering, 1931) Act 1677, § 9.

That Gainfort fulfills the requirement of having to live by the result of his wage earning as long as he is in a road camp is unquestionable. All his expenses are deducted from his wages, and the balance given him and/or his dependents. His

792

working or not working in a road camp, if he is qualified to so work by prison regulations, is purely voluntary upon his part. It seems immaterial that he is not an "employee" (see section 9 of the Gen.Law, supra)—he is receiving wages, and this is all that is required under the definition of section 1 (22). "Receiving wages" is liberally construed and is not confined to a master-servant or employer-employee relationship. See In re Yoder (D.C.) 127 F. 894; In re Brais (C.C.A.) 15 F.(2d) 693; First Nat. Bank v. Williams (C.C.A.) 31 F.(2d) 749; In re Inman (D.C.) 57 F.(2d) 595.

But, applying the second test, is his "paramount occupation" that of wage earning?

It is settled that the time the act of bankruptcy occurred is the time at which his status is to be determined. He may shift occupations from farmer to wage earner, to something else and back again, but if he is a bona fide wage earner at the time of the act alleged, that is all that is required. First Nat. Bank v. Williams, supra.

Certainly so far as his actual occupation and working is concerned, Gainfort is a wage earner. The only possible objection against his fulfilling the second test is that his being a convict overshadows his present vocation or trade of road building.

It appears possible to hold that it does not, and that he is a wage earner within the terms of the act. His occupation is that of a road worker—his status, that of a convict. It appears that the Bankruptcy Act is concerned solely with the former. A woman may concededly be a wage earner—would it be held that because she married (if she continued to work and support herself thereby) that her new status as a married woman changes her occupation or wage earning in the slightest (other than to allow the husband to control the funds involved in some jurisdictions)? It seems the act is directed more, if not solely, toward the amount earned as the fruit of the wage earner's labor than his status while earning it. Thus a person with the occupation of wage earning, but with the status of alienage, may be adjudged either a voluntary or an involuntary bankrupt. In re Clisdell, 2 A.B.R. 424; In re Boynton (D. C.) 10 F. 277.

If the act applies at all to Gainfort, it should apply in toto, and allow him its benefits and defenses as well as its burdens and liabilities.

There appearing to be a justifiable distinction between the wage earner's occupation and his status, and the Bankruptcy Act being directed to the former and not the latter, therefore, no amendment of the petition should allow as to the first act of bankruptcy alleged.

As to the second act of bankruptcy alleged, there appears to be no question of the convict's not being in prison—it is conceded that he was not in a road camp, but was in San Quentin Penitentiary proper. Amending to show he was not exempt at that time will be permissible. It will be so ordered.