291 P.2d 870

**Clark L. SHAIN, Claimant-Appellant,**

v.

**IDAHO STATE PENITENTIARY**

and

**State Insurance Fund, Defendants-Respondents.**

**No. 8295.**

Supreme Court of Idaho.

Dec. 20, 1955.

Paul S. Boyd, Boise, for appellant.

Graydon W. Smith, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., for respondents.

PORTER, Justice.

On September 24, 1950, appellant was incarcerated in the State Penitentiary under sentence for a felony, the sentence being "for a term of not more than five years at hard labor." On May 21, 1952, appellant, while working in the license plate factory at the penitentiary, suffered a severe personal injury by accidental means. The accident was caused by a faulty and

defective embosser press. Appellant duly filed his claim with the Industrial Accident Board for workmen's compensation. The board entered its order denying compensation and appellant has appealed to this court from such order. The controlling issue in this case is whether or not claimant was an employee within the Workmen's Compensation Law.

At the time of his injury, appellant was engaged in a prison work project authorized by the State Board of Correction under the provisions of Section 20–245, I.C., which section reads in part as follows:

"The state board of correction shall have the authority to use, under such rules and regulations as they may prescribe, the labor of convicts either within or without the walls of the penitentiary and on all public works done under the direct control of the state; * * *."

In the comparatively recent case of Miller v. City of Boise, 70 Idaho 137, 212 P.2d 654, we had before us a situation analogous to the present one. An inmate of the city jail of the City of Boise was performing labor in moving city furniture under the supervision of a city patrolman. He was injured while being transported to a cafe to eat. His claim for workmen's compensation was allowed by the Industrial Accident Board but was denied by this court on the ground that he was not an employee of the city. In our opinion we said, 70 Idaho 139, 212 P.2d 655:

"Furthermore, the above facts conclusively show Miller was not *employed* by the city of Boise, and, moreover, that he never *received* any *compensation* whatever from, nor was he ever *paid any compensation* by, Boise City. Hence, the relationship of employer and employee never existed between respondent and appellant."

The conclusion reached in the Miller case that a convicted prisoner in performing labor required by law is not an employee under the provisions of the Workmen's Compensation Law, is supported by the following cases: Murray County v. Hood, 163 Okl. 167, 21 P.2d 754; Greene's Case, 280 Mass. 506, 182 N.E. 857; Lawson v. Travelers' Ins. Co., 37 Ga.App. 85, 139 S.E. 96.

Appellant cites the case of California Highway Comm. v. Industrial Accident Comm., 200 Cal. 44, 251 P. 808, 49 A.L.R. 1377, in support of his contention. An examination of the opinion in such case discloses that it was decided under a special statute providing that the State Highway Commission might employ convicts and that such convicts should receive stipulated wages for their labor. The opinion concedes that absent such a statute, convicts would not be entitled to workmen's compensation.

Appellant makes the suggestion that as compensation for his labor appellant received certain privileges as a pris-

oner and that his work record would be considered on his application for parole. These rewards to the prisoner are a matter of grace and are at the discretion of the Board of Correction. They are not wages paid by the state to the prisoner giving rise to the relationship of employer and employee. The opinion in California Highway Comm. v. Industrial Accident Comm., supra, discusses this point and arrives at a conclusion contrary to the contention of appellant.

We are of the opinion that at the time of the accident appellant was not working under any contract of hire either express or implied but was performing labor required of him by law; and that he was not an employee entitled to compensation under the Workmen's Compensation Law. The order of the Industrial Accident Board denying compensation is affirmed.

TAYLOR, C. J., and KEETON and ANDERSON, JJ., concur.

SMITH, Justice (concurring specially).

I concur in the conclusion reached in the foregoing opinion. I deem this special concurring opinion to be in order in view of the gravity of the case and advisability of constructive legislation relating to the subject matter, in harmony with modern trends.

Appellant at the time of his injury was 29 years of age, was married with two children under the age of 18 years.

Appellant became an inmate of Idaho State Penitentiary September 25, 1950, and there incarcerated until May 21, 1952. On the last mentioned date he received accidental personal injury to his left hand for which the penitentiary furnished him medical aid and hospitalization. He was in a hospital until July 14, 1952, and then discharged as incompletely healed. July 14, 1952, he was paroled and released from custody.

Appellant received further treatment for his injured hand in Kansas City, Missouri, where he was hospitalized some 108 days, between July 27, 1952, to March 3, 1953, and where he had two operations and a skin graft necessitated by the injury. He was charged an aggregate of $1,190.75 for those services.

The penitentiary under the supervision and management of its state board of correction conducts a work program which includes the manufacture of license plates in its license plate factory, sometimes known as a tag plant. The penitentiary, at cost, manufactures for the state department of law enforcement the motor license plates and tags which that department issues; this is done pursuant to an agreement between that department and the state board of correction, approved by the state board of examiners. "At cost" presently in-

cludes only the cost of power, materials and supervision; it does not include wages since the prisoners who work in the tag plant do not receive wages or other monetary remuneration. The cost to the state of the license plates so manufactured has been less than prices quoted to the state, including competitive market quotations.

A prisoner is not compelled to work but, at his option, may do so; if he does, he has opportunity to learn a trade; he is accorded the privileges of a better cell, more yard privileges and a worker's diet of three meals a day.

The embosser press used in the manufacture of license plates on which appellant was hurt was faulty, defective and dangerous, and known to be so by the prison officials and the superintendent of the tag plant; on several occasions prior to appellant's accident the machine had demonstrated its faulty tendencies, and the accident which caused appellant's injury was on account of the faulty operation of the machine.

There are but few decisions wherein prisoners have sought workmen's compensation on account of injuries received growing out of work being performed as prisoners. Those cases announce the general rule that in the absence of special legislation extending workmen's compensation benefits to prisoners, or special statutory provisions, a prisoner does not come within the purview of workmen's compensation acts; this, because the contractual relationship of employer and employee between the prisoner and his master, the state, cannot arise out of the prisoner's then existent condition of involuntary servitude which results from his conviction and incarceration. Goff v. Union County, New Jersey Dept. Labor, 57 A.2d 480, 26 N.J.Misc. 135; Lawson v. Travelers' Ins. Co., 37 Ga.App. 85, 139 S.E. 196; Greenes Case, 280 Mass. 506, 182 N.E. 857; Miller v. City of Boise, 70 Idaho 137, 212 P.2d 654.

In the case of California Highway Commission v. Industrial Accident Commission, 200 Cal. 44, 251 P. 808, 49 A.L.R. 1377, a prisoner received an accidental personal injury while performing labor on a state highway. The work was not required of the prisoner but was optional on his part. He received a net remuneration of 75¢ a day for his work. The California Supreme Court ruled that a prisoner while engaged in such labor was entitled to workmen's compensation benefits. California's then existent statute, Cal.Laws 1923, c. 316, p. 667, relating to the use of convict labor in highway work was similar to Idaho's statute relating to the same subject matter, I.C., secs. 40–2202 and 40–2203, in that the California law then required and Idaho law likewise makes mandatory the payment, from highway funds, of a small remuneration to prisoners performing labor on highways. The California Supreme Court in said decision pointed to a different legal effect and end result had the prisoner received the injury inside the

prison walls. The same reasoning has application in the case here under consideration, for here, appellant, the prisoner, received the injury inside the prison walls while performing the work under the direct supervision of the state board of correction.

The state board of correction has authority to use convict labor either within or without the penitentiary walls on all public works done under the direct control of the state; this includes the manufacture of motor license plates within the penitentiary walls. I.C. § 20–245. The board has authority to install and equip plants for employment of inmates in such forms of industry and employment as the board deems advisable. I.C. § 20–406.

The board also may fix and set aside a remuneration, called compensation, for the labor of any inmate employed in any industry pursued in penal and adult reformatory institutions of this state, to be held for the benefit of the inmate, and such, if allowed, becomes a part of the cost accounting of the articles produced. I.C. § 20–409. This statute is in permissive language. It is not couched in the mandatory language of the statute relating to payment of remuneration to a prisoner who may work on highways, I.C. § 40–2203, under the supervision of the department of public works, I.C. § 40–2202.

While appellant appears remediless, nevertheless I point out that at the time he received his serious injury, he was engaged in public work, as the result of which the Industrial Accident Board found, and concerning which fact there is no dispute, that the State of Idaho reaped a pecuniary gain. I further point out that the State of Idaho in its declaration of police power sets forth the precept that the welfare of its industries depends upon the welfare of its wageworkers, and that all phases of the premises are withdrawn from controversy to the end that sure and certain relief for injured wageworkers, their families and dependents is provided regardless of questions of fault. I.C. § 72–102. I also direct attention to the safety laws of this state designed and intended to protect workmen from the hazards of unsafe working conditions in industry. I.C., Title 72, c. 11; Idaho Sess.Laws 1949, c. 254, and 1951 Sess.Laws, c. 248, p. 525.

Appellant, as the result of the unfortunate accident to which he was subjected, received severe injury to his left hand. He has lost the tip end of his thumb, his first or index finger at the distal joint, and the second, third and fourth fingers at their proximal joints. He has suffered a severe loss, almost all of the useful function of his left hand, due to an unsafe machine maintained by the state, though known by the state to be dangerously defective.

The result, in the matter here under consideration, is not in harmony with the beneficent legislation of the State of Idaho, relating to the welfare of its industries and its workers; for in this case all of the

external features and all of the risks of employment are present, with the occurrence of a serious personal injury caused by an accident arising out of and in the course of public work, with the state admittedly having reaped pecuniary gain by reason of appellant's labor; yet the state unfortunately has failed, or perhaps inadvertently overlooked, to provide a measure of compensation for appellant's serious permanent partial disability.

Modern concepts will no longer tolerate a status of a prisoner as being civilly dead for all purposes. A prisoner in the state prison is entitled to protection from injury to his person, I.C. § 18–313, and no conviction works a forfeiture of his property, I.C. § 18–314. Idaho has enlarged further upon the civil status of its prisoners in the penitentiary by creation of its board of correction which has the control, direction and management of the penitentiary and the care, maintenance and employment of the inmates, I.C. § 20–209, and of their rehabilitation, I.C. § 20–230. Work is expected of those capable of work without physical or mental injury to themselves, I.C. § 20–405.

Even though little value may be assigned to the rights of a prisoner during his confinement, nevertheless in most instances he will not always be a prisoner. The disability which he may receive;—in appellant's case the disability being of severe partial permanent nature,—acquired in prison, will create the same social problem, upon his return to civil life, as if the injury occurred while he was free; as has been stated in Larson's Workmen's Compensation Law, 1952 ed., vol. 1, p. 693:

> "The unique problem of prisoners calls for careful legislative amendment of compensation acts, adapting their coverage to appropriate kinds of prison employment and disability. North Carolina, Maryland and Wisconsin have made a start in this direction."

See N.C.Pub.Laws, 1929, c. 120, sec. 14, amended by N.C.Laws 1941, c. 295, providing compensation for effects of injuries received arising out of prison work, persisting after prison terms; Md., 1939 Code, Art. 101, § 47; Wis.Laws 1951, c. 539, making compensation benefits available upon parole as well as upon discharge; formerly benefits were paid only after discharge.

See also Moffat v. State, 116 Misc. 8, 189 N.Y.S. 360, wherein is construed special legislation whereby convicts doing prison work are allowed recovery for injuries received, caused by negligence on the part of the state and its employees, without fault of the worker; Metz v. Soule, 40 Iowa 236, wherein a convict injured in the state prison was granted a monthly allowance by legislative enactment.

I recommend to the Legislature that it cause to be made a study of the subject matter presented by this case, with the view of extending workmen's compensation cov-

erage, at least in some phases, to prisoners who perform prison labor; particularly, since remuneration as may be fixed and set aside to inmates of penal and adult reformatory institutions, and cost of workmen's compensation coverage, may be included in the cost of goods, wares and merchandise produced by such institutions. I.C. § 20–409.

TAYLOR, C. J., and ANDERSON, J., concur.