60 N.J. Super. 123 (1960)
158 A.2d 445
JOSEPH BROWN, PETITIONER-APPELLANT,
v.
JAMESBURG STATE HOME FOR BOYS, A PENAL INSTITUTION, AND THE STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Passaic County Court, Law Division.
Decided February 23, 1960.
*124 Messrs. David and Albert L. Cohn (Mr. Richard Lifland appearing), attorneys for petitioner-appellant.
Mr. David D. Furman, Attorney General of New Jersey (Mr. Charles I. Levine, Deputy Attorney General, appearing), attorneys for respondent-respondent.
NADELL, J.C.C.
This is an appeal from a judgment dismissing the petition for compensation against the State of New Jersey of Joseph Brown for injuries suffered by him while an inmate in the State Home for Boys at Jamesburg. The judgment appealed from is dated June 17, 1959, and was entered by Deputy Director Harold A. Ackerman of the Division of Workmen's Compensation of the New Jersey Department of Labor and Industry.
The facts are not in issue. The parties agreed to a stipulation of facts which sets forth both the facts and the issues involved. This stipulation reads as follows:
"1. Petitioner, Joseph Brown, was an inmate at the State Home for Boys at Jamesburg, where he had been committed for stealing an automobile, as a result of an order of the Judge of Juvenile and Domestic Relations Court, County of Passaic, dated December 7, 1955. This was his third commitment to the State Home for Boys at Jamesburg.
2. On April 3, 1956 following, when he was 14 years of age, he fell from a truck and was run over by a tractor while working in the truck garden at the institution, suffering injuries of the left hip. He was hospitalized at the Princeton Hospital on the same day where it was found upon examination that he had suffered a posterior dislocation of the left hip. The dislocation was adjusted by physicians at the said hospital and the petitioner was returned to the institution on April 6, 1956. After two weeks of bed rest, he ambulated with crutches and apparently suffered no permanent disability from the incident. However, a physical examination made *125 of him on February 27, 1957 at the Jamesburg institution disclosed `moderate deformity of left hip.' It is stated in a claim under affidavit of petitioner's grandmother, Littie Parks, that the x-ray taken at the hospital discloses `a fracture at the head of the femur' and that petitioner `was operated on at the Princeton Hospital and an open reduction was performed.' Examination of the hospital records disclosed no fractures or open reduction but did disclose a closed reduction for dislocation.
3. Petitioner was recommitted to the State Home for Boys at Jamesburg by Order of the Judge of Juvenile and Domestic Relations Court, County of Passaic, dated February 11, 1957. He was paroled on December 13, 1957 and re-arrested on February 11, 1958 in Passaic County for breaking, entering and larceny of auto. He is presently confined in the Annandale Reformatory on that charge based upon a plea of guilty.
4. At no time during any of the commitments and specifically at no time during the commitments which include the date of April 3, 1956, was there any oral or written contract for hire entered into between Petitioner and Respondent nor did Petitioner receive any monies from the Respondent for any work performed by him for the Respondent.
5. As part of its rehabilitation work, respondent operates a training school at the Jamesburg Reformatory in which petitioner was a student, which training school has recognized academic standing and instructors of which are duly certified by the State Board of Education.
6. It is further stipulated that treatment was rendered to the Petitioner at the Respondent's request by the doctors in attendance at the infirmary at the Jamesburg Institute and at the Princeton Hospital.
7. It is further stipulated that photostatic copies of the records, if required, of the said hospital will be admitted in evidence without further or formal proof and are to be furnished by the respondent.
8. It is further stipulated that the report of examination by Dr. Jack Sall, Paterson, New Jersey, dated March 7, 1958, if required, is to be admitted into evidence without formal or other proof and any reports of medical experts produced by the respondent with relation to examinations made of the petitioner are to be admitted into evidence, if required, without formal or other further proof.
9. The issues to be determined by the Division of Workmen's Compensation are stipulated to be as follows:
a. Was the petitioner an employee of the respondent on April 3, 1956 and is he entitled to the benefits of Title 34, Chapter 15, Section 2, the `Workmen's Compensation Act'? Specifically, is he entitled to an award for temporary or permanent disability, or both, under the provisions of the aforesaid Act?
b. If it is determined that he is entitled to an award, then it is stipulated that the medical proof will be offered for the purpose *126 of determining the nature and extent of the disability, it being agreed that either party reserves the right to appeal from the determination."
The issue in this case is whether there is a relationship of employer and employee between the State of New Jersey and an inmate of the State Home for Boys at Jamesburg.
Under the Workmen's Compensation Act, N.J.S.A. 34:15-36, the terms "employer" and "employee" are defined as follows:
"`Employer' is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; `employee' is synonymous with servant, and includes all natural persons, including officers of corporations, who perform service for an employer for financial consideration."
Under this definition it has been held that employment ordinarily presupposes a contractual relation; there must be a contract of hire, express or implied in fact. Bendler v. Bendler, 3 N.J. 161, 165 et seq. (1949). The burden of establishing all the statutory requirements rests upon the petitioner in compensation. Mahoney v. Nitroform Co., Inc., 36 N.J. Super. 116, 125 (App. Div. 1955), reversed on other grounds 20 N.J. 499 (1956).
In Cerniglia v. City of Passaic, 50 N.J. Super. 201, 207 (App. Div. 1958), the same principle was followed. In that case a volunteer coach of a Little League Team for the City of Passaic was held to be a volunteer who could not recover for compensation for injuries sustained in the course of the game. It was held that there was never any intent to enter into any contract of hire between the petitioner and the City of Passaic.
The exact point raised in the present case was determined in Goff v. Union County, 26 N.J. Misc. 135 (W.C.B. 1948). In that case the petitioner testified that while an inmate of the Union County Jail he was asked by an officer of the jail if he would do some painting; that he consented to perform this work because he would obtain some extra *127 food; that the material was supplied by the county and the petitioner was obliged to follow the instructions of a guard who supervised the construction of the work. The petitioner suffered the injury while painting a cell block. The injury was held not compensable. Deputy Commissioner Harry S. Medinets said:
"It is inconceivable that a person who is serving a sentence duly imposed upon him by law and who is incarcerated in an institution established by a State, County or Municipal Government, because he is performing some work while a prisoner, be deemed an employee of the governmental agent in charge of the jail. To hold otherwise would mean that the officials of a penal institution would be employers of their prisoners whenever they delegate to any of the prisoners the performance of any work that may be necessary to maintain their morale and to aid in their rehabilitation. This would be contrary to public policy.
To constitute one an employee so as to permit recovery under the compensation act for injuries sustained, it is essential that there be a contract of service. Essbee Amusement Corp. v. Greenhaus, 114 N.J.L. 492; 177 A. 562; Rojeski v. Pennington Dairy Farms, Inc., 118 N.J.L. 335; 192 A. 746. The proofs in the instant case do not bring the petitioner within this principle. As a prisoner, the petitioner was a ward of the County of Union and as such his normal rights of free and independent action were limited. Neither he nor the Sheriff in whose custody the petitioner was placed are capable of creating between themselves the status of master and servant for the performance of work in the institution in the absence of express statutory authority in law. I am not aware of any such authority in law which would authorize a Sheriff of a County to engage a prisoner as an employee and thereby bind the Board of Chosen Freeholders and the County of Union.
* * * In the case sub judice there was neither a valid contract of employment nor was it ever assumed by the parties that the petitioner was to receive any financial consideration for any work that he might perform. * * *" (26 N.J. Misc., at page 138)
Accordingly compensation was denied.
The same question has been determined in a number of other states. It has been uniformly held that an injury suffered by a prisoner while doing work during confinement is not compensable.
In Greene's Case, 280 Mass. 506, 182 N.E. 857 (Sup. Jud. Ct. 1932), the claimant was serving a three months' *128 sentence in jail to work out a $125 fine. While there he was sent to clean out a sewer and he fell into boiling water and lye, suffering injuries. It was held that his injuries were not compensable. The court stated the ground of its decision as follows:
"The only question presented by the appeal is whether the claimant was an employee at the time he was injured within the meaning of (Workmen's Compensation Act) which reads: `"Employee," every person in the service of another under any contract of hire, express or implied, oral or written, except masters of and seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer. * * *' The claimant as a prisoner was confined in jail for failure to pay a fine imposed upon him by order of the court. The fact that he was obliged to perform labor did not constitute him an employee of the county `under any contract of hire, express or implied, oral or written.' These words as used in the statute imply a voluntary relation between the parties and are not applicable to a prisoner who is compelled to perform manual labor as punishment for his offense." 182 N.E., at page 857.
A similar point was decided by the Court of Appeals of Maryland in Moats v. State, 215 Md. 49, 136 A.2d 757 (1957).
To the same effect is Miller v. City of Boise, 70 Idaho 137, 139, 212 P.2d 654 (Sup. Ct. 1949) and Shain v. Idaho State Penitentiary, 77 Idaho 292, 291 P.2d 870 (Sup. Ct. 1955).
The last mentioned case refers to the California case of California Highway Commission, Department of Engineering v. Industrial Accident Commission, 200 Cal. 44, 251 P. 808, 49 A.L.R. 1377 (Sup. Ct. 1926), where a convict was injured while working on a public highway under the direction of the highway commission and his injury was held compensable under a statute providing for the payment of compensation to a convict for work so performed by him. In referring to the California case, the Idaho Supreme Court said that the case was decided under a special statute providing that the state highway commission might employ *129 convicts and pay them stipulated wages and that the California opinion concedes that in the absence of such a statute, a convict would not be entitled to workmen's compensation.
It is interesting to note that the California statute in question was repealed in 1927 by an act expressly excluding convict labor on state roads. (Cal. Laws of 1927, c. 653.)
The uniform rulings denying compensation in a case like the present include a decision by the Court of Appeals of Georgia. Lawson v. Travelers' Ins. Co., 37 Ga. App. 85, 139 S.E. 96 (1927), and a decision of the Supreme Court of Oklahoma, Murray County v. Hood, 163 Okl. 167, 21 P.2d 754 (1933).
To the same effect is 1 Larson, Workmen's Compensation Law, § 47.30, p. 692, where the author says:
"Convicts and prisoners have usually been denied compensation for injuries sustained in connection with work done within the prison, even when some kind of reward attended their exertions. The reason given is that such a convict cannot and does not make a true contract of hire with the authorities by whom he is confined. The inducements which might be held out to him, in the form of extra food or even money, are in no sense consideration for an enforceable contract of hire."
The judgment of the Workmen's Compensation Division denying compensation to the petitioner is, therefore, affirmed.