[Civ. No. 11693.   Third Dist.   Apr. 24, 1968.]

RAYMOND PRUITT, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, COUNTY OF NE-
VADA et al., Respondents.

Colley & McGhee and Milton L. McGhee for Petitioner.

Everett A. Corten, Richard Swanson, T. Groezinger, Loton Wells and G. K. Bogue for Respondents.

PIERCE, P. J.—Herein we review an order of respondent Workmen's Compensation Appeals Board denying petitioner relief under the workmen's compensation provisions of the Labor Code for injuries suffered. Denial of relief was based upon the ground that at the time of the claimed injuries he was not an "employee" as that word is defined in Labor Code, section 3351.[1] Nonemployee status was found upon the fact that petitioner was a jail inmate of the County of Nevada. When the claimed injury was received, however, he

---

[1]Labor Code, section 3351 defines an employee for workmen's compensation purposes as follows: "[E]very person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed. . . ."

548

had been "loaned out" to Nevada City to work on its sewerage plant. It was held this was not a "contract of hire, express or implied," within the quoted code definition. The verity of that holding is the question we discuss. ■ Our determination is that the board was incorrect.

The facts here and before the board were stipulated to:

"The applicant in this case was imprisoned on March 7, 1966, after being convicted for drunk driving with a prior conviction.

"On March 9, 1966 he was sent by the Grass Valley Court to the County Jail for six months.

"At the County Jail prisoners may volunteer to work if they so desire, although they do not have to work. Those who volunteer to work are given five days off their sentence for every thirty days work. . . .

"There is no written contract to the effect, but the City and the County had an agreement whereby the City can pick up prisoners at the County Jail and work them in the City Park or at the sewage plant. Such prisoners are those who have volunteered to work in order to reduce their sentences. The County furnishes the prisoners with a bag-lunch when they are sent out to work on a City project. The City furnishes no food but does furnish a carton of cigarettes per week to the prisoners that work for the City.

"The only sewage processing plant in the area is run by Nevada City, which bills the County for its services including the waste-disposal from the County Hospital.

"On or about March 28, 1966 the applicant in company with three other persons was swinging and pushing a large tank at the sewage plant. Shortly thereafter applicant began complaining of his back and although he kept on working for a month or so he continually complained about his back. It appears that Mr. Pruitt was hurt while engaged in this work at the sewage plant."

Petitioner filed his application August 8, 1966, naming the city as his employer. He later joined the county as a party defendant. State Compensation Insurance Fund is the carrier for both city and county. The insurer denied *any* employment relationship. The initial finding of the referee was in petitioner's favor but he found that the county and not the city was the employer. A petition for reconsideration was filed, granted and the board's decision, filed June 12, 1967, was, as stated, against petitioner. We issued a writ of review.

We approach the question for decision by stating matters

NOT included therein: (1) Petitioner is not an inmate of a state prison, not a felon who has lost his rights as a citizen; (2) although respondents seem to contend to the contrary,[2] he was at the time of his injury not performing compulsory work imposed as an incident to his incarceration, the labor performed was voluntary; (3) he was not working for the county, he had been "loaned out" to the city and was working for it. He was at the time of the injury solely under the latter's control. The question is one of first impression in the appellate courts of California.

The facts, ruling and reasoning of the California Supreme Court in *California Highway Com.* v. *Industrial Acc. Com.* (1926) 200 Cal. 44, 46-48 [251 P. 808, 49 A.L.R. 1377], however, while not determinative, are helpful. There a state prison inmate who had been "farmed out" to the California Highway Commission for labor on state highways was injured. It was held he was entitled to workmen's compensation benefits. The workmen's compensation, insurance and safety act of 1917 (Stats. 1917, ch. 586, p. 831) was then in effect. Section 8 thereof was in all respects here material identical with Labor Code, section 3351. But the decision did not rest upon those provisions. It was based upon an interpretation of the "Convicts Road Camp Bill." (Stats. 1923, ch. 316, p. 667.) That bill did not define an employee. It did describe the type of prisoner involved and circumstances under which road work was permitted; it authorized employment of a certain class of convicts (upon requisition by the highway commission) for work on the highways of the state. *The work was voluntary.* Volunteers were paid not to exceed a net of 75 cents per day. A fixed credit on sentence time to be served was allowed for good conduct. The reasoning of the Supreme Court was that under the act the services performed were referred to as "employment"; that *some* compensation was paid; and that the workmen's compensation law as a whole "should be liberally construed to carry out its beneficent purposes." (P. 49.) The opinion distinguished between compulsory work performed as an incident to penal servitude and voluntary work performed.[3]

---

[2]Respondent State Compensation Insurance Fund notes that under the stipulated facts those who engage in voluntary work receive sentence time credits for their labor but then observes: "[I]t is obvious that those who choose not to work are *disciplined* by having to serve a longer sentence." (Italics ours.) This is reasoning *post hoc ergo propter hoc.*

[3]The court in the California Highway Commission case, *supra* (200 Cal. 44), also struggled with the problem posed by the status of the felon incarcerated in a state prison and the fact of his loss of civil rights.

Turning to other jurisdictions the case bearing the closest similarity to the case at bench which we have found is *Johnson* v. *Industrial Com.* (1960) 88 Ariz. 354 [356 P.2d 1021]. It involved a county jail prisoner who was injured while working for a nonprofit corporation (Yuma County Fair, Inc.) under an arrangement whereby such prisoners (who apparently volunteered for the work) were loaned to the corporation to work under the direction and control of a corporation employee, and under which arrangement prisoners were paid no wages but received food, lodging, sundries and cigarettes from the corporation and were given three days credit toward their sentences for each day worked. The Arizona Supreme Court held the injured petitioner was an employee of the county fair corporation and was entitled to compensation benefits under the Workmen's Compensation Law of Arizona. (That law also included in its definition of "employee" a person employed under a contract of hire, express or implied. (See fn. 1)) Factors mentioned by the court in reaching that conclusion were that during the performance of the work petitioner had been under the exclusive control of the county fair corporation, the court stating that the essential elements of a master and servant relationship are " 'that the master shall have control of the employee and the right to direct the manner in which the service shall be performed.' " (P. 1023.) The court did not find significant the fact that petitioner did not receive monetary compensation but was "working in exchange of service for favors." The court said (on p. 1023): ". . . Consideration flowed from the employer by way of different food and lodging, perhaps better, and sundries and cigarettes."

The only difference between *Johnson, supra,* and the case we consider is that petitioner there was loaned out to a private but nonprofit corporation. Here he was working for a municipal corporation. We do not deem that a distinguishing difference.

---

It likened the Convicts Road Camp Bill to certain parole legislation under which restoration of certain civil rights was afforded. It stated the legislative power extended both to deprive and restore civil rights in whole or in part.

As shown we do not face the problem of a petitioner deprived of his civil rights, nor of one performing compulsory labor. After the California Highway Commission case in 1926, the Legislature in 1927 "repealed" it as case law by the enactment of laws expressly excluding inmates of state prisons from eligibility for compensation benefits. Those laws are now embodied in Labor Code, section 3352, subdivision (e), and Penal Code, sections 2700, 2766 and 2791. No similar exclusion is provided regarding county jail inmates.

Respondents rely, among other cases, upon *Watson* v. *Industrial Com.* (1966) 100 Ariz. 327 [414 P.2d 144]. There, however, petitioner was an inmate of a state prison doing, when injured on a state prison farm, compulsory work (although it was work for which he received special credits on time served). It was held petitioner was not entitled to compensation benefits. A principal basis of the court's ruling was that the work was not voluntary. It is said (on p. 148) : ". . . A contract of employment contemplates at least two parties capable of giving their consent." *Johnson* v. *Industrial Com.* (1960) *supra,* 88 Ariz. 354 [356 P.2d 1021], was (on p. 148) *approved* and distinguished. It was distinguished upon the grounds: (1) that there the prisoner was not working for the state on a state project; also (2) that the work performed was voluntary. Thus, the *Watson* case supports petitioner's position, not respondents'.

*Ugarte* v. *Industrial Acc. Com.* (1960) 25 Cal.Comp. Cases 146, another road camp case, is also relied upon by respondents. There too work performed was an incident of the inmate's incarceration. It is therefore similarly distinguishable.

*Greene's Case* (1932) 280 Mass. 506 [182 N.E. 857], cited by the respondents, also distinguishes between voluntary and compulsory labor performed as an incident to incarceration. The same or similar distinctions can be found in every case cited by respondents. Further citation and discussion are unnecessary.

■ Penal Code, section 4017 provides that county jail prisoners may be required to perform labor on public works or ways in the county. Government Code, section 25359, implemented by Nevada County Ordinance No. 198, provides for the use of county jail prisoners on public work projects. Compulsory work as an incident of incarceration is the backbone of all of those laws.

In said section 4017 (Pen. Code) there is an express provision that when an inmate is employed in fire fighting, he shall be considered an employee for the purposes of coverage under the workmen's compensation provisions of the Labor Code. It is argued that that requires us to apply the maxim, *Expressio unius est exclusio alterius.* Although this court, and no doubt this writer, have been offenders as blameworthy as any, we feel compelled to state herein that that maxim is perhaps the most overworked judicial crutch to statutory interpretation of any of the similar aids known to the law. We agree with the

statement in *Reilly* v. *Ozzard* (1960) 33 N.J. 529 [166 A.2d 360, at page 365, 89 A.L.R2d 612] : ''[I]t usually serves to describe a result rather than to assist in reaching it. The final question is whether in a given context an express provision with respect to a portion of an area reveals by implication a decision with respect to the remainder. The issue is one of intention. The answer resides in the common sense of the situation.'' In enacting the fire fighting protective provision for jail inmates in section 4017, the attention of the Legislature was focused upon the hazards peculiar to that occupation and it humanely deemed that a prisoner, notwithstanding that he was performing compulsory work incident to his incarceration, should have the beneficent provisions of workmen's compensation extended to him. It did not address itself at all to the question whether county jail inmates loaned out to a third party for voluntary work should be deemed an ''employee.'' We do not deem the maxim helpful.[4]

█ When the board is determining the status of a petitioner as an ''employee,'' it must look to the substance and essence of the relationship between the petitioner and the party sought to be charged as the employer. (*Van Horn* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 457 [33 Cal. Rptr. 169], hearing denied.) The substance and essence of the relationship between this petitioner and the city was one in which the former was performing a nongratuitous service for the latter, the elements of which fall within the master and servant status.

█ We hold that when a county jail inmate is loaned out to a third party for work on a voluntary basis, whether that third party be a private corporation or a municipality, and when he is under the control of the latter with the right in said third party to direct the manner in which the service shall be performed, there is (1) a relationship of master and servant, (2) an implied contract of hire and therefore by statutory definition (in Lab. Code, § 3351) the inmate becomes an ''employee'' and as such entitled to workmen's compensation benefits when injured in the course and scope of his employment. That is true notwithstanding that monetary

---

[4]And in passing it is proper to state neither do we accept petitioner's argument that because the Legislature in Labor Code, section 3352, subdivision (e), and Penal Code, sections 2700, 2766 and 2791 excludes felons serving state prison terms without making a similar exclusion of county jail inmates serving sentences for misdemeanors, such exclusion means the latter must be deemed ''employees'' entitled to compensation benefits under the maxim, *expressio unius, exclusio alterius.*

consideration passing to the prisoner be nil and the other consideration from the direct beneficiary of the services (here a carton of cigarettes) be of nominal value. ■ This court has held that payment of monetary wages is not a *sine qua non* of employment under workmen's compensation law. (*Union Lbr. Co.* v. *Industrial Acc. Com.* (1936) 12 Cal.App. 2d 588, 596 [55 P.2d 911].) Concededly, the principal consideration passing to petitioner was his credit on sentence time served plus an interlude release from jail confinement. That which the inmate-servant received may not have been great from the viewpoint of some, but that which he gave in return was considerable.

■ We stress that the mandate of the liberal interpretation in favor of the workman to be given workmen's compensation provisions is a material factor in our decision. Liberality of interpretation is not only a mandate of the Legislature as the representative of the People, the People have also spoken directly in the workman's compensation constitutional provisions. (Cal. Const., art. XX, § 21.) This court has had occasion to trace those constitutional and legislative provisions in another context in *State Comp. Ins. Fund* v. *Superior Court* (1965) 237 Cal.App.2d 416, at page 420 et seq. [46 Cal.Rptr. 891]. Our Supreme Court stated in *Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, at page 354 [294 P.2d 713] : "[A]ny reasonable doubt as to whether an act was contemplated by the employment, in view of this state's liberal policy of construction in favor of the employee, should be resolved in favor of the employee. (Citations.)" That statement, often repeated, has had its latest reiteration in *State Comp. Ins. Fund* v. *Workmen's Comp. Appeals Board* (1967) 67 Cal.2d 925, 928 [64 Cal.Rptr. 323, 434 P.2d 619]. As we have seen, it was also applied to effect a liberal definition of "employee" in *California Highway Com.* v. *Industrial Acc. Com., supra,* 200 Cal. 44. We reject respondent board's reasoning that a holding in favor of petitioner would cause insurance premiums to be raised and therefore "[t]his will be an added burden on the taxpayers and is clearly against public policy." No one doubts that insurance premiums are a burden. It does not follow that insurance is against public policy. We dispute that the extension by the Legislature of workmen's compensation benefits to county jail inmates under the voluntary work-projects philosophy (which respondents concede to be one of enlightened penology) is against public policy. The Legislature deemed the benefits to the public

worth the premium-price. We have no right to, and do not, question legislative wisdom.

Contrary to the board's determination Nevada City (insured by State Compensation Insurance Fund) is the sole employer. We so hold.

Both the order dismissing the city as the employer and the order discharging the State Compensation Insurance Fund are annulled, and respondent board is directed to accept jurisdiction, reinstate Nevada City as petitioner's employer, dismiss the county, and take such further proceedings as may be warranted under the workmen's compensation provisions of the Labor Code and pursuant to the views expressed herein.

Friedman, J., and Regan, J., concurred.

The petition of the respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied June 19, 1968.