# EDGAR T. ANDERSON *v.* HAWAIIAN DREDGING COMPANY, LIMITED.

## No. 1030

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT. HON. C. W. ASHFORD, JUDGE.

ARGUED NOVEMBER 26, 1917.    · DECIDED DECEMBER 11, 1917.

### ROBERTSON, C.J., QUARLES AND COKE, JJ.

CONSTITUTIONAL LAW—*statutes—right to question constitutionality of statute.*

It is a well settled rule that a question of the supposed conflict of a statutory provision with the Constitution will not be considered at the instance of one whose rights do not appear to be affected by such provision, but where a statute which so regulates the correlative rights of two classes—as employers and employees—that if void as to one it should be held void as to the other, complaint of a party belonging to one class may require an examination of the statute in both aspects.

SAME—*Fifth Amendment—due process of law.*

Due process of law requires that when one's rights of life, liberty or property are to be adjudicated he must have notice of the proceeding and be given a hearing—or, at least, an opportunity to be heard—thereon. But so far as the statute providing for the proceeding is concerned it is sufficient if it provides for, or, at least does not negative, the right of the adverse party to notice that the proceeding has been commenced. Notice of the time of hearing must be given the parties by the tribunal before which it is pending whether required by statute or rule or not. The failure to give such notice may invalidate the particular proceeding in which the failure occurred, but will not draw in question the statute.

SAME—*Seventh Amendment—right of trial by jury.*

The constitutional requirement that in suits at common law the right of trial by jury shall be preserved does not extend to other than actions at common law. The right is not invaded where, as in the case of Workmen's Compensation Acts, the common law action for damages for personal injury sustained by employees in industrial employment has been abolished and a new and fixed measure of compensation is fixed by statute.

SAME—*Workmen's Compensation Act—police power.*

> The right of the legislature to establish a new system of compensation for injured employees based upon the theory underlying Workmen's Compensation Acts does not necessarily depend upon whether the employee was engaged in "hazardous" or "extrahazardous" employment, or on whether he is a skilled or unskilled laborer, or upon the classifying of the different kinds of industrial employment. Nor does it depend on the inclusion in the statute of a provision for a governmental compensation fund to which all employers shall contribute. The legislature having the power to abolish the common law rules with respect to the relations between employers and employees engaged in industrial enterprise for profit in the more hazardous kinds of work, the extension of the new system to all industrial employment is a reasonable and valid exercise of the police power.

### OPINION OF THE COURT BY ROBERTSON, C.J.

The plaintiff, an employee of the defendant, instituted an action in the circuit court on March 27, 1916, to recover damages for personal injuries alleged to have been sustained by him in the course of his employment through the negligence of the defendant in failing to provide a safe place for him to work. The defendant interposed a demurrer to the complaint which asserted, *inter alia,* that the plaintiff's remedy, if any, is exclusively under the provisions of Act 221 of the Session Laws of 1915 (the Workmen's Compensation Act), and that under the provisions of said act, and particularly section 4 thereof, an action for tort or for damages or in trespass on the case or otherwise does not lie for or on account of, or in consequence of, any or all of the acts, injuries and matters alleged in the complaint. Argument was had upon the demurrer as to the validity of the statute in question, the plaintiff taking the position that it lacked due process of law in violation of the Fifth Amendment of the Constitution, and denied the right of trial by jury in violation of the Seventh Amendment. The defendant's contentions were

upheld by the circuit court; the demurrer was overruled with leave to answer; and an interlocutory bill of exceptions was allowed and certified to this court.

The Workmen's Compensation Act of this Territory is of the compulsory type. Except that it contains no provision for a governmental insurance fund, it follows closely the form for a compulsory act approved by the conference of commissioners of uniform state laws, October, 1914. The act itself provides (Sec. 64) that "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act," and, (Sec. 61) that "If any part or section of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of the act as a whole, or any part thereof which can be given effect without the part so decided to be unconstitutional or invalid." In the case of *Re Ichijiro Ikoma,* 23 Haw. 291, 295, it was said, "Our act, by its terms, is to be liberally construed, and by authority the construction must be a broad one so as to effectuate the purposes of the act."

Counsel for the appellant have raised the question as to whether the appellee is in a position to make the claim that the statute does not require notice to be given in connection with certain of the proceedings, and, therefore, does not constitute due process of law, since, by an affidavit filed by the plaintiff in the court below, it appears that he filed a claim with the industrial accident board, and that the board "after a full hearing" denied the plaintiff a "lump sum for the injuries sustained by him," whereupon the plaintiff appealed to the circuit court, where, apparently, the appeal is still pending, though complaint is made that that court has not prepared or prescribed rules providing the procedure in such cases; also whether the appellee is in a position to say that the act is not a reasonable exercise of the police power because it is not limited in its operation to the more hazardous occupa-

tions, since it appears from the allegations of the complaint that the plaintiff was employed in a very hazardous occupation at the time of the alleged injury, viz.: in the work of constructing a steel scow wherein, in order to put in and fasten certain plates and bolts, he was obliged to stand upon certain narrow planks about fifty feet above the ground, and from whence he fell. It is a well settled rule that a question of the supposed conflict of a statutory provision with the Constitution will not be considered at the instance of one whose rights do not appear to be affected by such provision. *Territory* v. *Field,* 23 Haw. 230, 233, and cases there referred to. But the United States supreme court has recognized an exception to the rule which is applicable to cases involving a statute which so regulates the correlative rights of two classes—as employers and employees—that if void as to one it should be held void .as to the other, complaint of a party belonging to one class may require an examination of the statute in both aspects. *New York Cent. R. Co.* v. *White,* 243 U. S. 188, 197. In *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 234, the court said, "the employer's exemption from liability to private action is an essential part of the legislative scheme and the *quid pro quo* for the burdens imposed upon him, so that if the act is not valid as against employees it is not valid as against employers." In the case at bar the validity of the statute is questioned by the employee, but it is contended that the act not only infringes his constitutional rights, but is unreasonable from the standpoint of employers and, therefore, not a valid exercise of the police power of the Territory. Under the circumstances we think we should consider all the points which have been presented by the appellee.

As to the Fifth Amendment. It is conceded, as it must have been, that "due process of law" requires that when

one's rights of life, liberty or property are to be adjudicated he must have notice of the proceeding and be given a hearing—or, at least, an opportunity to be heard—thereon. The circuit court held that the statute is deficient in this respect. The reasoning upon which the conclusion was based was set forth in an opinion rendered in another case which has been made part of the record in this case, and has been adopted by counsel for the appellee and quoted in their brief as follows:

"In order to illustrate just how, and to what extent, the Hawaiian statute may be complied with, without, in fact or in law, according to a complaining employee that due process of law which the Constitution requires, it may be useful to chronologically and sequentially summarize the process by which a committee of arbitration, or an industrial accident board, as provided for by the Act in question, may proceed, from the point where a claim for compensation is made, to the point where an award upon such claim shall be rendered and shall become final and binding upon the parties. Beginning with section 21 of the Act we find that the procedure may be as follows:

"A notice by or on behalf of the injured employee must be given to the employer, both of the accident and of the claim, but actual notice by the employer of the accident, injury and claim is deemed the equivalent of such notice from the employee and claimant. A time limit of three months is set for this notice, and without such notice, or its equivalent, (actual knowledge by the employer), no proceedings looking to an award of compensation may be had. (Secs. 21-24.) In the case of mental incompetents and minors unprovided with a guardian or next friend, no time limit for the giving of such notice exists. (Sec. 25.) The industrial accident board appointed under the terms of Sec. 26 has sole jurisdiction of claims for such compensation. Whether or not the proceedings by or before an industrial accident board, or a committee of arbitration, (which may be described as a subsidiary of such board), is purely judicial in character, need not be

here determined; it is to be noted, however, that although the procedure 'shall be as summary and simple as reasonably may be,' yet the board or its individual members shall have the power to subpoena witnesses, administer oaths, and examine such of the books and records of the parties to a proceeding as relate to the questions in dispute. (Sec. 29.) These functions are certainly judicial in character, whatever be the name of the tribunal by which they are exercised.

"In the event of an agreement being reached between employer and employee, respecting the compensation to be paid for injuries received, a memorandum of such agreement shall be filed with the board, and requires its approval in order to its validity. (Sec. 30.)

"The procedure, in the event that no such agreement is reached, provides for hearing by a committee of arbitration, but whether such procedure is mandatory need not be here decided. The language of the statute is (Sec. 31), that 'either party *may* make an application to the board for the formation of a committee of arbitration.' As above stated, it is understood that, in practice, no such committees have been, or are being formed or appointed in this circuit, but that, on the contrary, the board, in the first instance, and without the intervention of such subsidiary committee, proceeds to hold an inquiry into the facts and circumstances of the alleged accident and injury, and to make an award. It may be that this procedure is valid and binding, but, in any event, its validity is not especially challenged in this case, and need not now be judicially passed upon.

"The committee is composed of three members, constituted as follows: the board nominates one member, who may or may not be a member of the board itself, and the person so nominated shall be chairman of the committee. The other two members shall be named, respectively, by the parties; and if a vacancy occurs, it shall be filled in the same way as the original appointment, (Secs. 31-32).

"The board shall request the parties to appoint their respective representatives, and if within seven days after such request, or after a vacancy has occurred, either party

does not appoint his representative, the board shall fill
the vacancy and notify the parties to that effect.   (Sec.
32.)   Let us assume (1) that either party has made a for-
mal application to the board for the formation of a com-
mittee of arbitration; (2) that the board, acting upon
such application, has appointed one of its own members,
or a substitute, to act as chairman of such committee; and
(3) has requested the parties to appoint their respective
representatives; (4) that one or both of the parties, for
a period of seven days after such request, has failed to
make such appointment; (5) that the board, owing to such
failure, has appointed one or two others, as the case may
be, to fill the committee; (6) that, in the event of the full
committee having been previously nominated and appoint-
ed, a vacancy has occurred, and has been filled agreeably
to the provisions of Sec. 32; (7) that the parties have
finally been notified of the formation and *personnel* of the
committee.   At this point it is important to observe that
all provision for notice to either of the contesting parties
is withdrawn.   If we assume that the 'requests' to the par-
ties to nominate members of the committee may stand as
the equivalent of due notice to them, up to this point, still
we find that, under the provisions of Sec. 33 'the commit-
tee of arbitration shall make such inquiries and investi-
gations as it shall deem necessary.'   There is a provision
as to the place for the hearings to be held, namely, in the
city or town where the injury occurred, if within this Ter-
ritory, and 'unless otherwise agreed,' but there is abso-
lutely no provision that the committee, when so formed,
or the industrial accident board, in the event that it sees
fit to proceed directly with the inquiry, without the inter-
position of  a committee of arbitration, shall serve any
notice, of any character whatsoever, upon either of the
parties, of the time or place of hearing.   On the other
hand, the provisions of the statute (Sec. 33) would ap-
parently be fully met and executed if such committee, or
such board, should proceed to an *ex parte* hearing, with-
out any notice to either of the contesting parties, and after
such hearing, even though it be *ex parte,* and without any
knowledge on the part of the claimant, or on the part of

the respondent, that such hearing is being held, or is even in immediate contemplation, the committee. or the board, as the case might be, may make its award, 'together with a statement of its findings of fact, rulings of law, and any other matters pertinent to the question arising before it.' This award and its accompanying documents shall be filed with the board.

"Up to this point, therefore, we have seen that the procedure provided by statute may be fully complied with without giving notice to either of the contending parties of the hearing intended to be held, and actually had and held upon the claim involved. Obviously, this is not due process of law. But it may be answered that the award may be reviewed before the full board, under the provisions of Section 36. An award having been made, under the provisions of Section 33, it is the duty of the board to notify the parties thereof, and we will assume that this has been done. The rights of either party then are, to apply for a review of the award, and such application may, (Sec. 33), be made within ten days after the sending of the award, (by the board), to the parties; and if no such application for review is made, then the award shall be final and enforceable. Such review may also be had (Sec. 36), if the committee fails to make an award within thirty days after its formation, but there is no provision as to whether the review here contemplated shall be had upon the motion of a party, or upon motion of the board itself. In either event, however, that is, if a review before the full board be had, the full board 'shall make an award which shall be filed with the record of the proceedings and shall state its conclusions of fact and rulings of law, and shall immediately send to. the parties a copy of the award.' (Sec..36.)

"Let it be noticed, that here, again, there is an absolute absence of provision for notice to either party of any hearing before the board which may result either from an application for review by either party, or from the action of the board itself in taking up the claim for adjustment in the event that the committee of arbitration shall have failed, during thirty days after its formation, to make

and file an award. Quite irrespective of whether a party to the controversy shall request such review, or whether the board shall proceed to a hearing because of the default of the committee of arbitration to make and file an award, it is obvious that there can be no due process of law in connection with such proposed hearing by and before the board, unless a reasonable notice of such hearing shall have been communicated to the respective parties,—and, as above, there is no provision for such notice. As before intimated, and as held by many authorities, some of which will be cited on a later page, there must be a positive provision for the giving of such notice, and it must be complied with, in order to constitute due process of law."

It is to be observed in the first place that the court fell into error in thinking that "there must be a positive provision for the giving of such notice * * * in order to constitute due process of law." A number of well considered cases cited in the brief of the appellant hold that if the frame of the statute is such as to permit it, the requirement of notice may be implied, or read into it. See *Plymouth Coal Co. v. Pennslyvania*, 232 U. S. 531, 544; *Kentucky Railroad Tax Cases*, 115 U. S. 321, 334; *Union Pac. R. Co. v. Abilene*, 98 Pac. (Kan.) 224. See also *In re Atcherley*, 19 Haw. 346. In the case of *Carstens v. Pillsbury*, 172 Cal. 572, 578, where the court had before it a provision of the California Workmen's Compensation Insurance and Safety Act, that "the commission may, with or without notice to either party, cause testimony to be taken," the court said, "But we do not think the section, when given a reasonable interpretation, authorizes such star-chamber proceedings. It must be read as an entirety, and in the light of the rule that an unconstitutional effect should not be given to it if another meaning is reasonably discoverable from the language. The taking of testimony and the reception of evidence are essentially parts of a hearing. If the commission directs

it to be done without notice, the right to be present at the hearing will not be given unless, at least, before the trial or hearing is concluded, the report of such testimony and evidence, made to the commission, is exhibited to each party and he is afforded an opportunity, if he so desires, to recall and cross-examine the witnesses and to rebut the evidence reported. The express language of the section is silent on this point, but the declared 'right to be present at any hearing' and to 'present such testimony as shall be pertinent under the pleadings' implies that this shall be done." In the case of *In re Allen,* 82 Vt. 365, cited in the opinion of the circuit court, it was said, "As before seen the statute in question contains no specific provision for notice to the alleged insane person of the institution of proceedings for a court of inquiry to ascertain whether he shall be removed to the hospital for the insane as a state charge. Yet it does not follow that the statute is wanting in due process of law" (p. 372). The court quoted from Mr. Bishop's work on Written Laws to the effect that "a statute will not be interpreted, unless its words are specific requiring it, to authorize judicial proceedings without notice to the party to be affected by them" (id.), and from the case of *Evans* v. *Johnson,* 39 W. Va. 299, that "Even though the statute be silent as to notice, as ours as to appointment of committees by county courts is, though that as to circuit court appointment requires notice, yet the common law steps in and requires it" (p. 373). And it was held that the statute "should be construed in the light of the requirements of the foregoing principles of the common law, and that so construed the alleged insane person is entitled by law to proper notice of such proceedings and an opportunity to be present and defend," and that the statute as so construed was not violative of the Fourteenth Amendment (p. 374). In two other cases, *State* v. *Billings,* 55 Minn. 467, and *Matter*

*of Lambert,* 134 Cal. 626, which, also, were cited in the opinion of the circuit court, the courts having before them statutes which purported to authorize the commitment of insane persons without notice to them, invoked the rule that the test to apply to a statute whose constitutional validity is impeached is not what has been done under it, but what may be done by its authority, and held them to be wanting in due process of law and invalid. The statute here in question, however, does not fall in the class of statutes which are silent on the matter of the giving of notice to the party against whom a proceeding has been commenced. It must be remembered that in making a claim for compensation under the act the employee (or those standing in his stead) is the moving party, and section 21 of the act provides for the giving of notice to the employer against whom compensation is claimed. The faults found by the circuit court were with sections 33 and 36 which do not in terms require that notice be given the parties of the hearing before the committee on arbitration, or of the trial before the industrial accident board on review of an award. But those proceedings of course could only follow the filing of a claim by the employee and notice thereof to the employer. In other words, the sections referred to relate to proceedings to be had after the parties have come or been brought into court, as it were. Our statute on civil procedure (R. L. 1915, Chap. 137) relating to the practice in the circuit courts contains no provision regarding notice to be given parties in pending cases of the proposed trial of a case. Section 2401 provides that causes shall be taken up and disposed of in the order in which they stand upon the calendar, and section 2402 provides for the entry of an order of nonsuit or default in case of the non-appearance of the plaintiff or defendant. A rule of the circuit court of the first circuit (24) contains the provision that "The clerk shall, in

writing, duly notify the attorneys of the respective parties of the date and hour and before which judge the cases are set for trial," but formerly there was no such requirement in the rules. See 9 Haw. 715. Surely the constitutionality of the statute would not depend on the existence of a rule of court. In *Payne* v. *Furtado*, 22 Haw. 723, 729, this court held that a garnishee was entitled to notice of hearing without reference to any statute· or rule of court. In *Vivas* v. *Akoni*, 14 Haw. 115, where an appeal had been taken to the circuit court from a judgment of a district court, and the appeal was heard without notice to the appellee the judgment of the circuit court was vacated. Natural justice and the common law, as well as the Constitution, demand that a party whose rights are to be affected shall be given notice of the proceeding. So far as the statute relating to·the proceeding is concerned it is sufficient if it provide for, or, at least, does not negative the right of the adverse party to notice of the institution of the proceeding. The proceeding having been properly commenced, notice of the time of hearing must be given to the parties by the tribunal before which it is pending whether required by statute or rule or not. The failure to give such notice may invalidate the particular proceeding in which the failure occurred, but will not draw into question the statute.

The circuit court also found a defect in section 37 of the act which provides that the industrial accident board, on the application of any party, on account of changed conditions, but not oftener than once in six months, may review any agreement or award and end, diminish or increase the compensation, without providing for the giving of notice to the other party. It would seem that the observations made with reference to sections 33 and 36 apply to section 37. If not, it is clear that the provision of the latter section is severable and, if invalid, would not affect the

rest of the statute. Furthermore, no proceeding was had under that section with reference to the claim of the plaintiff in this case, and no importance seems to be attached to the point by counsel for the appellee. We hold that the statute is not lacking in due process of law upon any of the grounds which have been urged in connection with the requirements as to notice. It is not claimed that the plaintiff was not, in fact, heard upon his claim by the industrial accident board.

As to the Seventh Amendment. The circuit court held, and counsel for the appellee contend, that the statute, in providing for the awarding of compensation to injured employees according to a scale based upon the nature of the injury and the amount of wages received by the employee, deprived the plaintiff of the right to have his damages assessed by a jury in violation of the constitutional provision. The right to a trial by jury as to questions other than the measure of compensation is afforded by section 38 of the act which allows appeals to the circuit court. The provision of the Seventh Amendment is that "In suits at common law * * * the right of trial by jury shall be preserved." The requirement does not extend to other than actions at common law. See *McElrath* v. *United States*, 102 U. S. 426; *Guthrie Nat. Bank* v. *Guthrie*, 173 U. S. 528; *Territory* v. *Hart*, 23 Haw. 558. The prosecution of a claim for compensation under the statute, of course, is not an action at common law, so that the question raised in this connection goes to the power of the legislature to abolish the common law relations between employers and employees and to substitute a new remedy in cases of personal injury sustained by an employee in the course of his employment by the method followed in Workmen's Compensation Acts in general. Without attempting to enlarge upon the subject, we think it enough to observe that the constitutional validity of

the principle upon which Workmen's Compensation Acts are based has been definitely settled by the decisions of federal and state courts. *New York Cent. R. Co.* v. *White,* 243 U. S. 188; *Hawkins* v. *Bleakly,* id. 210; *Mountain Timber Co.* v. *Washington,* id. 219; *State* v. *Clausen,* 65 Wash. 156; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180; *State* v. *Creamer,* 85 Oh. St. 349; *Western Ind. Co.* v. *Pillsbury,* 170 Cal. 686; *Adams* v. *Iten Biscuit Co.,* 162 Pac. (Okl.) 938; *Hunter* v. *Colfax Con. Coal Co.,* 154 N. W. (Ia.) 1037; *Borgnis* v. *Falk Co.,* 147 Wis. 327. See also *Second Employer's Liability Cases,* 223 U. S. 1. In the case of *Ives* v. *South Buffalo R. Co.,* 201 N. Y. 271, cited in the opinion of the circuit court and in the brief of the appellee, it was held that while it is within the scope of legislative power to change or abolish the rules of the common law with reference to injuries resulting from the negligence of fellow servants and contributory negligence of the person injured, the legislature could not abolish the rule that an employee assumes the ordinary and obvious risks incident to his employment and special risks arising out of dangerous conditions which were known and appreciated by him; and that a statute which imposes upon an employer, who has omitted no legal duty and has committed no wrong, a liability based soley upon a legislative determination that his business is inherently dangerous, is not a valid exercise of the police power, but constitutes a deprivation of property without due process of law. But that case, though decided as recently as 1911, has already become obsolete, partly by reason of an amendment to the state constitution, and principally through the exposure of the fallacious reasoning upon which the court based its final conclusion. It must now be regarded as decisively settled that the common law rule respecting the assumption of risk as well as the other rules relative to the rights and liabilities of employer and employee may

be altered by legislation, at least if some reasonably just substitute be provided.   On the point as to the constitutional right to a trial by jury where the legislature has replaced the common law theories with a new system of compensation, the court, in *Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514, 526, said,

"It is not accurate to say that the employee is deprived of all remedy for a wrongful injury.   He is given a remedy.   To be sure, the compensation or recovery is limited, and that in a sense may possibly constitute a taking; but if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of the employer has been.   When he enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer and is afforded a remedy, which is prompt, certain and inexpensive.   In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages; a considerable part of which, if recovered at all after long delay, must go to pay expenses and lawyers' fees."

In *State* v. *Clausen, supra,* at p. 210, *the court said,* "The right of trial by jury accorded by the constitution, as applicable to civil cases, is incident only to causes of action recognized by law.   The act here in question takes away the cause of action, on the one hand, and the ground of defense, on the other; and merges both in a statutory indemnity, fixed and certain.   If the power to do away with a cause of action in any case exists at all, in the exercise of the police power of the state, then the right of trial by jury is thereafter no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the one is to leave the other nothing upon which to operate."

And in *Mountain Timber Co.* v. *Washington, supra,* at p. 235, the court said, "The Seventh Amendment, with its provision for preserving the right of trial by jury, is invoked.   It is conceded that this has no reference to pro-

ceedings in the state courts, but it is urged that the question is material for the reason that if the act be constitutional it must be followed in the federal courts in cases that are within its provisions. So far as private rights of action are preserved this is no doubt true; but with respect to those we find nothing in the act that excludes a trial by jury. As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury."

We hold that the statute is not in conflict with the Seventh Amendment of the Constitution.

As to the police power. Counsel for the appellee argue that where a statute which deprives persons of property, or the right to contract, or interferes with individual liberty, is sought to be justified as an exercise of the police power it can be sustained only on the view that it constitutes a reasonable restraint or invasion of private rights in the interest of the public welfare. They cite the cases of *Plessy* v. *Ferguson,* 163 U. S. 537, 550; *Wisconsin, etc., R. Co.* v. *Jacobson,* 179 U. S. 287, 301; and *New York Cent. R. Co.* v. *White, supra,* where the court said (p. 202), "Of course, we cannot ignore the question whether the new arrangement is arbitrary and unreasonable, from the standpoint of natural justice. Respecting this, it is important to be observed that the act applies only to disabling or fatal personal injuries received in the course of hazardous employment in gainful occupation." Counsel contend that in the cases in which Workmen's Compensation Acts of the compulsory type have been upheld they have been sustained as reasonable exercises of the police power because of their classification of industries and the limiting of the application to certain "hazardous" or "extra-hazardous" employments; and it is said that the California act, which is more like the statute of this Territory, received the endorsement of the majority of the supreme court of California (*Western Ind. Co.* v. *Pills-*

*bury*) only because it provided for a state compensation fund to which all employers may contribute, and from which fund all injured employees are paid, and so long as the employer contributes to the fund he is under no further liability to his employees.

The right of the legislature to establish a new system based upon the theory underlying Workmen's Compensation Acts does not necessarily depend upon whether the employee was engaged in "hazardous" or "extrahazardous" employment, or on whether he is a skilled or an unskilled laborer, or upon the making of any such classifications.    The acts in which classifications have been made have not been sustained because of them, but in spite of them.   Nor does the legislative power depend on the inclusion of a provision for a governmental compensation fund to which all employers shall contribute. In our view the theory of the statute of this Territory that each employer should provide for the compensation of the employees injured in his own employ is every whit as reasonable as that of the California act.   Its natural tendency would be to cause greater care and better management on the part of employers of labor.

"The proper administration of Workmen's Compensation Acts necessitates an appreciation of the legislative purpose to abolish the common law system relating to injuries to employes as inadequate to meet modern conditions and conceptions of moral obligations, and substitute therefor a system based on a high conception of man's obligation to his fellow man, a system recognizing every personal loss to an employe, which is not self-inflicted, as an element of the cost of production to be charged to the industry rather than to the individual employer, and liquidated in the steps ending with consumption, so that the burden is finally borne by the community in general. * * * In place of the common law remedy, which involves tedious delays and great economic waste, it has been sought by this legislation to provide a

certain and speedy method by which injured employes and their dependents may secure, at a minimum of cost and free from certain well established rules of law, compensation which will be more uniform than that awarded by juries, and which, so far as practicable, is regulated as to amount by fixed rules and schedules. A full appreciation of the scope of this legislation cannot be obtained without also taking into consideration the fact that the state has an interest in compensation being awarded that the support of the workmen or his dependents may not become a public charge." 1 Honnold on Workmen's Compensation, Sec. 2.

And in *New York Cent. R. Co. v. White, supra,* at pp. 203, 204, the court said, "Reduced to its elements, the situation to be dealt with is this: Employer and employee, by mutual consent, engage in a common operation intended to be advantageous to both; the employee is to contribute his personal services, and for these is to receive wages, and ordinarily nothing more; the employer is to furnish plant, facilities, organization, capital, credit, is to control and manage the operation, paying the wages and other expenses, disposing of the product at such prices as he can obtain, taking all the profits, if any there be, and of necessity bearing the entire losses. In the nature of things, there is more or less of a probability that the employee may lose his life through some accidental injury arising out of the employment, leaving his widow or children deprived of their natural support; or that he may sustain an injury not mortal but resulting in his total or partial disablement, temporary or permanent, with corresponding impairment of earning capacity. The physical suffering must be borne by the employee alone; the laws of nature prevent this from being evaded or shifted to another, and the statute makes no attempt to afford an equivalent in compensation. But, besides, there is the loss of earning power; a loss of that which stands to the employee as his capital in trade. This is a loss arising out of the business, and, however it may be charged up, is an expense of the operation, as truly as the cost of repairing broken machinery or any other expense that ordi-

narily is paid by the employer.   Who is to bear the charge? It is plain that, on grounds of natural justice, it is not unreasonable for the State, while relieving the employer from responsibility for damages measured by common-law standards and payable in cases where he or those for whose conduct he is answerable are found to be at fault, to require him to contribute a reasonable amount, and according to a reasonable and definite scale, by way of compensation for the loss of earning power incurred in the common enterprise, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall—that is, upon the injured employee or his dependents.   Nor can it be deemed arbitrary and unreasonable, from the standpoint of the employee's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove, and substitute a system under which in all ordinary cases of accidental injury he is sure of a definite and easily ascertained compensation, not being obliged to assume the entire loss in any case but in all cases assuming any loss beyond the prescribed scale."

The legislature was not bound to draw fine distinctions as to the difference in the degree of hazard in different kinds or classes of industrial employment so as to include some and exclude others from the operation of the act. See *Louisville etc. R. Co.* v. *Melton*, 218 U. S. 36, 51.   If the legislature has the power, as it is settled it has, to abolish the common law rules with respect to the relations between employers and employees engaged in industrial enterprise for profit in the more hazardous kinds of work, we believe it necessarily follows that it has the power to extend the new system to all industrial employment, and that such extension constitutes a reasonable and valid exercise of the police power.

Counsel for the appellee point out that by the provision

of section 28 of the act the members of the industrial accident board shall serve without remuneration. But so long as reputable citizens are willing to give their services to the public upon that condition and perform the duties imposed upon them by the law we do not see that the validity of the statute or the proceedings had under it are in any way affected by the provision.

The exception to the order overruling the demurrer to the complaint is sustained, and the case is remanded to the circuit court with instructions to vacate that order and sustain the demurrer.

*G. A. Davis* and *W. T. Carden* for plaintiff.

*W. F. Frear* (*Frear, Prosser, Anderson & Marx* on the brief) for defendant.