ROBERT E. HAWORTH, Plaintiff-Appellant, v. STATE OF HAWAII, Defendant-Appellee

NO. 6110

APRIL 2, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND RETIRED JUSTICE KIDWELL,
ASSIGNED BY REASON OF VACANCY*

OPINION OF THE COURT BY KIDWELL, J.

Plaintiff-appellant seeks damages for injuries incurred while working as a prisoner of the State serving a sentence at the Olinda Honor Camp, a minimum security penal institution on the island of Maui. Together with other prison inmates, appellant had been assigned to the work of removing loose boulders and rocks from embankments adjacent to and

---

* Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

rising above a public road. Appellant suffered his injuries by a fall from such an embankment while engaged in such work, and appeals from a judgment for the State in a bench trial. We reverse.

Although the trial court found that appellant had been "required" to engage in the road work,[1] the record does not disclose precisely the nature of appellant's assignment to the work project. Appellant testified, without contradiction, that the job had been "assigned" to him and that he was "placed" on the job by the superintendent of Olinda Camp. He had worked on the road project for approximately six months before the accident, and had been working in the general area of the accident for a couple of days. He had periodically received instructions from his superior to the effect that if at any time he encountered a dangerous task he should refrain from performing it and report it to his supervisor, who would decide upon alternative methods to accomplish the task. On the morning of the accident, before leaving the Camp, the supervisor gave instructions to appellant and the other inmates which included a reminder of the prior safety instructions, a discussion of how a large boulder at the top of the hill would be dislodged solely by a bulldozer operated by an inmate, an assignment of appellant and others to work on the lower embankments around that on which the accident took place and a caution as to the danger of being at the top of the embankment where the bulldozer would be working.

The site of the work consisted of an unimproved road on one side of which was a deep gully and on the other side of which rose an embankment resembling a bell curve, the apex of which was approximately 30 feet in height. In removing rocks from such embankments, it had been the customary procedure of appellant and other inmates to commence at the lower level and to work along the edge of the embankment to the higher level. On arrival at the site, appellant began to remove rocks at an elevation of approximately 10 to 15 feet

---

[1] Appellant's complaint averred that the State required appellant to perform work and labor in the course of his incarceration. This averment was expressly admitted by the State's answer.

above the road. Within an hour, he had worked another 20 to 25 feet to the top of the embankment where the bulldozer was attempting to remove the large boulder. Appellant observed a large rock protruding from the face of the embankment at its top and near the edge. In order to dislodge the rock appellant climbed down the face of the embankment to a ledge about 3½ to 4 feet from the top, first testing the ledge with his digging bar, and began to try to pry the rock loose. He was observed in that position and ordered to return to the top of the embankment by the supervisor. As appellant attempted to press himself upward the edge of the embankment gave way and he fell.

The trial court found that, by climbing to the top of the embankment, appellant disobeyed the safety instructions and work assignment given by the superintendent, and that when he lowered himself to the ledge he disregarded the superintendent's safety instructions, was attempting an obviously dangerous task and unreasonably and unnecessarily placed himself in a dangerous position. As its conclusions of law, the trial court determined that the State owed a duty to provide appellant with proper safety equipment and had been negligent in failing to do so, but that such negligence had not been the proximate cause of appellant's injuries; that appellant knew or should have known that he was placing himself in a dangerous situation and assumed the risk of injury; and that appellant did not exercise ordinary care in the performance of his work, which negligence was the proximate cause of his injuries. Appellant was found to have suffered general damages in the amount of $25,000 and special damages of $350.

There was no finding by the trial court as to appellant's awareness of the risk to which he exposed himself in his attempt to dislodge the rock. Appellant testified that he did not consider it any more dangerous than some of the other assignments, and that "the whole job was dangerous."

At the outset of the trial, counsel for the State advised the court that "in this case the State of Hawaii is not disputing we owe the duty to the plaintiff of providing him reasonable and safe place to work." In the appeal, the State has advised us that it does not dispute the trial court's conclusion of law, as

paraphrased by the State, that the State breached its common law duty of ordinary care by its failure to provide appellant with proper safety equipment. The State expressly refrains from contending that the supervisor's instructions fulfilled the State's duty of ordinary care owed to appellant. Thus the State's defense rests upon doctrines of assumption of risk or of contributory negligence.

I.

In relying upon the doctrine of assumption of risk, the State seeks to place this case in the context of common law master-servant relationships. The almost universal substitution of statutory workers' compensation for common law employers' liability has rendered the common law doctrines largely obsolete. However, both parties have proceeded in this case upon the assumption, without discussion, that the Hawaii Workers' Compensation Law, HRS Chapter 386, is inapplicable, although it was not until after appellant's accident that this chapter was made expressly inapplicable to committed persons by amendment of HRS § 353-25. We have no occasion to consider claims or defenses not pleaded, and view the case as unaffected by the statute.

The common law duty of an employer to exercise reasonable care for the safety of his employees has been stated:

> A master is subject to a duty that care be used either to provide working conditions which are reasonably safe for his servants and subservants, considering the nature of the employment, or to warn them of risks of unsafe conditions which he should realize they may not discover by the exercise of due care.

Restatement (Second) of Agency § 492 (1958). These duties are considered non-delegable, *i.e.* the employer is vicariously liable for the negligent failure to perform such duties by one he appointed to perform them.

The employer's duty to provide a safe workplace does not require him to eliminate risks which are inherent in the work, and he is further relieved of responsibility for any unnecessarily dangerous conditions of which the employee has notice.

Restatement (Second) of Agency § 499, comment (b). Nor does the employer have a duty to warn of dangers normally incident to the work, or of extraordinary dangers which the employee knows or should know because of their obviousness. Restatement (Second) of Agency §§ 492, 510 Comment a.

Thus it has been held that where an employee remains at work after learning that the employer has failed in his duty to provide a safe workplace, the employee relieves the employer from liability by assuming the risk. *Morris & Co. v. Alvis,* 130 Va. 434, 107 S.E. 664 (1921) (unguarded elevator shaft; premises inadequately lighted); *Richter v. Razore,* 56 Wash. 2d 580, 354 P.2d 706 (1960) (automatic bowling pinsetting machine without protective metal guard); *Eiban v. Widsteen,* 31 Wash. 2d 655, 198 P.2d 667 (1948) (staircase without handrail); *Abbot v. McCadden,* 81 Wis. 563, 51 N.W. 1079 (1892) (switch engines running at speed in excess of statutory limit); *Schultz v. Chicago & N.W.R. Co.,* 67 Wis. 616, 31 N.W. 321 (1887) (custom as to loading of coal on railroad tender).

However, these doctrines rest upon the assumed premise that the employee is a free agent who voluntarily may accept or reject the employment and the risks which it entails. A work relationship, the terms of which the employee may bargain for and from which he is entitled to withdraw, is a fundamental assumption of common law master-servant doctrines.

> The cornerstone of the common law edifice was the economic theory that there was complete mobility of labor, that the supply of work was unlimited, and that the workman was an entirely free agent, under no compulsion to enter into the employment. He was expected therefore to accept and take upon himself all the usual risks of his trade, together with any unusual risks of which he had knowledge, and to relieve his employer of any duty to protect him.

Prosser, Law of Torts 526 (4th ed. 1971).

Although arguing strenuously in support of the application in this case of common law master-servant doctrines, including particularly assumption of risk, the State has not referred

us to any decision in which recovery for a work injury has been denied to a prisoner upon that ground. We are aware of none. On the other hand, we are aware of the overwhelming body of authority which, absent explicit legislative authorization, denies workers' compensation coverage to inmates of state institutions engaged in institutional labor projects, for want of a voluntary employment relationship. A major purpose of the enactment of workers' compensation legislation in Hawaii was to provide injured workers with a remedy which was not subject to the assumption of risk doctrine. *Anderson v. Hawaiian Dredging Company, Ltd.*, 24 Haw. 97 (1917). It would be most surprising to discover that this legislation has fallen short of embracing all of the master-servant relationships in which the common law doctrine imposes assumption of risk upon the worker. That issue is not directly before us. However, the cases which hold that workers' compensation benefits are unavailable to inmates of state institutions are equally persuasive that such inmates are not subject to assumption of risk doctrines founded upon a voluntary employer-employee relationship.

"The relationship between the State and its prisoners is the antithesis of voluntary employment." *Frederick v. Men's Reformatory*, 203 N.W.2d 797, 798 (Iowa 1973). Where the prisoner has no choice between working and not working, which appears to have been true in the present case, the bilateral contract of hire necessary for workers' compensation coverage is lacking. 1B Larson, Workmen's Compensation Law § 47.31 (1978). The cases in support of this proposition are numerous.[2] The fact that a prisoner may be allowed

[2] See, *e.g., Keeney v. Industrial Comm'n*, 24 Ariz. App. 3, 535 P.2d 31 (1975); *Watson v. Industrial Comm'n*, 100 Ariz. 327, 414 P.2d 144 (1966); *Lawson v. Travelers Ins. Co.*, 37 Ga. App. 85, 139 S.E. 96 (1927); *Shain v. Idaho State Penitentiary*, 77 Idaho 292, 291 P.2d 870 (1955); *Miller v. City of Boise*, 70 Idaho 137, 212 P.2d 654 (1949); *Schraner v. State*, 135 Ind. App. 504, 189 N.E.2d 119 (1963); *Frederick v. Men's Reformatory*, 203 N.W.2d 797 (Iowa 1973); *Tackett v. Lagrange Penitentiary*, 524 S.W.2d 468 (Ky. Ct. App. 1975); *Jones v. Houston Fire & Cas. Ins. Co.*, 134 So. 2d 377 (La. Ct. App. 1961); *Greene's Case*, 280 Mass. 506, 182 N.E. 857 (1932); *Brown v. Jamesburg State Home for Boys*, 60 N.J. Super. 123, 158 A.2d 445 (1960); *Goff v. County of Union*, 26 N.J. Misc. 135, 57 A.2d 480 (Workmen's Comp. Bur. 1948); *Scott v. City of Hobbs*, 69 N.M. 330, 366 P.2d 854 (1961); *Reid v. New York State Dept.*

some payment for services, as is permitted under HRS §
353-25, has been held not to affect this result. *Keeney v.
Industrial Commission, supra.*

If a sufficiently voluntary employment relationship was
not present to entitle appellant to workers' compensation, we
believe that it is not possible to regard the relationship as
sufficiently voluntary to support application of the assump-
tion of risk doctrine. We conclude that the doctrine of as-
sumption of risk has no application and that the trial court
erroneously determined that appellant is barred from recov-
ery because of his assumption of the risk of his injury. We
turn to consideration of whether the judgment can be sus-
tained on other grounds.

II.

Although it determined that the State had been negligent
in failing to provide appellant with proper safety equipment, it
is quite apparent that the trial court perceived a duty of care
on the part of the State only as an employer. However, we
have recognized a duty of the State to exercise ordinary care
for the safety of prisoners in its custody. *Upchurch v. State,* 51
Haw. 150, 454 P.2d 112 (1969).[3]

It is well settled that a state, by reason of the special
relationship created by its custody of a prisoner, is under a
duty to the prisoner to take reasonable action to protect the
prisoner against unreasonable risk of physical harm. The
duty arises out of the deprivation by the state of the prisoner's
normal opportunities to protect himself, particularly through

---

*of Corr. Serv.,* 54 App. Div. 2d 83, 387 N.Y.S.2d 589 (1976); *City of Clinton v. White
Crow,* 488 P.2d 1232 (Okla. 1971); *In re Kroth,* 408 P.2d 335 (Okla. 1965); *Murray
County v. Hood,* 163 Okla. 167, 21 P.2d 754 (1933); *Abrams v. Madison County
Highway Dept.* 495 S.W.2d 539 (Tenn. 1973). *Cf. Evanson v. University of Hawaii,*
52 Haw. 595, 483 P.2d 187 (1971).

[3] Since appellant was not engaged in work for hire and was not an employee of the
State within the meaning of the Hawaii Occupational Safety and Health Law,
Chapter 396, we do not have occasion to consider appellant's arguments which
predicate a duty upon that statute. We express no opinion on the relevancy of
regulations issued pursuant to the statute as bearing upon the standard of care.

avoidance of places or situations which involve risk. When the custodial authorities are charged with knowledge that the prisoner may incur harm unless preclusive measures are taken, reasonable care must be exercised to prevent such harm.[4]

We think there can be no doubt that the State's duty to exercise reasonable care for the safety of appellant continued during his work assignment. It is true that appellant was not ordered to place himself in the precarious position from which he fell. However, it is undisputed that the State required appellant to decide within general guidelines what tasks to assume. The State exercised the authority it possessed by reason of appellant's commitment so as to place upon him the burden of making those decisions. It is now the State's position that the risk of the decisions he was so required to make was upon him. We do not agree that the State can divest itself of the duty it owes to its prisoners in that manner.

We do not have a case in which a prisoner exposed himself to risk for any personal reason or benefit. Appellant was guilty of excessive zeal in the accomplishment of the work to which he and his fellows had been assigned. We consider that the risk that appellant might misjudge the appropriate level of danger to which he should expose himself in attaining the goal

---

[4] See generally, Restatement (Second) of Torts §§ 314A, 320 (1965); Annotation, 14 A.L.R.2d 353 (1950); Annotation, 79 A.L.R. 3d 1210 (1976). *Thomas v. Williams,* 105 Ga. App. 321, 124 S.E.2d 409 (1962) (plaintiff's decedent, though intoxicated and partially conscious, was confined to cell with matches in his possession); *Porter v. Cook County,* 42 Ill. App. 3d 287, 355 N.E.2d 561 (1976) (plaintiff, who was subject to hallucinations, was confined to cell with matches in his possession); *Dezort v. Village of Hinsdale,* 35 Ill. App. 3d 703, 342 N.E.2d 468 (1976) (plaintiff's decedent, who had manifested suicidal behavior before arrest, owed duty of reasonable care to prevent suicide); *Roberts v. State,* 307 N.E.2d 501 (Ind. Ct. App. 1974) (uninvolved prisoner injured when guards fired into group of demonstrating inmates); *Bartlett v. Commonwealth,* 418 S.W.2d 225 (Ky. 1967) (plaintiff's decedent murdered by other inmates with known dangerous propensities); *Brown v. State,* 354 So. 2d 633 (La. App. 1977) (defendant breached duty to provide plaintiff with adequate medical treatment when it did not supply diet prescribed by numerous physicians); *Breaux v. State,* 326 So. 2d 481 (La. 1976) (plaintiff's decedent murdered by inmates with known dangerous propensities); *Barlow v. City of New Orleans,* 241 So. 2d 501 (La. 1970) (intoxicated plaintiff left unattended in locked police car and injured by fire); *Daniels v. Andersen,* 195 Neb. 95, 237 N.W.2d 397 (1975) (intoxicated plaintiff confined in communal cell attacked by other inmate).

toward which he had been directed by the State required the State to consider whether ordering him to work without supervision was unreasonably dangerous. Since the danger arose from the exercise of the State's authority over appellant as a prisoner, a duty to exercise reasonable care to avoid the danger arose on familiar tort principles. Restatement (Second) of Torts § 302A states the applicable principle:

> *Risk of Negligence or Recklessness of Others* An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

The comment to this section is particularly relevant here:

> [T]he actor is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable man would behave. Where the possibility of such negligence involves an unreasonable risk of harm, either to the person who is to be negligent or to another, the actor, as a reasonable man, is required to take it into account and to govern his conduct accordingly.

In requiring any of its prisoners to undertake work assignments and in issuing work instructions, the State cannot disregard the possibility that the prisoner will negligently misinterpret or disregard limitations contained in the instructions. The duty to exercise reasonable care to avoid exposure of the State's prisoners to unreasonable risks applied to the work instructions issued to appellant and the supervision exercised over his performance. In cases in which a prisoner has been set to work without supervision on a task which the state should have recognized would be dangerous to him, the state has been held to be liable for injuries that adequate supervision would have avoided. *Palmisano v. State*, 47 App. Div. 2d 692, 365 N.Y.S.2d 53 (1975); *Oliver v. State*, 186 N.Y.S.2d 151 (Ct. Cl. 1959); *Gould v. State*, 92 N.Y.S.2d 251 (Ct. Cl. 1949); *Lee v. State*, 64 N.Y.S.2d 417 (Ct. Cl. 1946).

Although the trial court found that the State was negligent in failing to provide appellant with safety equipment, there is no finding with respect to the exercise of reasonable care by

the State in issuing work instructions to appellant and in supervising his performance of the work. We are unable to provide these findings and without them the judgment cannot be sustained. The trial court's conclusion that appellant's own negligence was the proximate cause of the accident cannot be taken as negating the possibility that the State's failure in the fulfillment of its duty to appellant in these respects was also a proximate cause, in the absence of any consideration by the trial court of the factual question of the sufficiency of the State's performance of that duty. If the State's negligence and that of appellant were both proximate causes of the accident, findings with respect to the comparative negligence of the parties are required. HRS § 663-31. Whether retrial is necessary in order to enable such findings to be made must be determined on remand.

The judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

*James Krueger* for plaintiff-appellant.

*Leighton Kim Oshima*, Deputy Attorney General, for defendant-appellee.