**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000007
17-DEC-2024
07:57 AM
Dkt. 74 SO**

NO. CAAP-21-0000007

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CHEYENNE BELFORD, Plaintiff-Appellant, v.
STATE OF HAWAIʻI, Defendant-Appellee, and
JOHN AND/OR JANE DOES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC171001287)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka, and Wadsworth, JJ.)

Plaintiff-Appellant Cheyenne Belford (**Belford**) appeals from the January 5, 2021 Final Judgment (**Judgment**) entered in favor of Defendant-Appellee State of Hawaiʻi (**State**) after a bench trial conducted by the Circuit Court of the First Circuit (**Circuit Court**).[1] Belford also challenges the Circuit Court's March 20, 2020 Findings of Fact, Conclusions of Law, and Decision and Order Granting Judgment in Favor of Defendant (**FOFs, COLs, and Order**) and December 23, 2020 Order Denying [Belford's] Motion to Review and Disallow Costs (**Order re Costs**).

---

[1]     The Honorable Bert I. Ayabe presided.

Belford raises six points of error on appeal, contending that the Circuit Court: (1) clearly erred in finding that the supervision of Belford was proper and appropriate, and that Belford did not present any credible evidence to rebut this; (2) clearly erred in relying on Belford's minimum custody status in determining that the State did not breach its duty to act reasonably in supervising Belford to prevent injury; (3) clearly erred in finding that Belford had demonstrated competency in the use of the tools and in relying upon that finding to conclude the State did not breach its duty; (4) clearly erred in finding and relying upon evidence that workline instructor Bruce Kurosawa (**Kurosawa**) specifically told the class not to cut on the rolling tool box, and erred in concluding that the State did not breach its duty to act reasonably in training Belford to prevent injury; (5) erred in concluding that Belford's injuries were not legally caused by the State; and (6) clearly erred in finding that Belford failed to present credible evidence of her financial condition and inability to pay the State's costs.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Belford's points of error as follows:

(1) - (4) Belford argues that the Circuit Court clearly erred in finding that the State did not breach its duty to exercise reasonable care. COL 4 is not challenged and provides:

2

4.    The State owes a general duty of reasonable care to all persons in its custody. Figueroa v. State, 61 Haw. 369, 376, 604 P.2d 1198, 1201 (1979).

Belford challenges, *inter alia*, COLs 5 and 6, which state:

5.    The State did not breach its duty to act reasonably in supervising [Belford] and the inmates in the building maintenance class to prevent injury to them. Because [Belford] and the inmates in the building maintenance class were minimum custody inmates, and because they had demonstrated competency in the use of the tools, the amount of supervision required was intermittent. [Belford] and the other inmates in the class did not need constant supervision as they were not behavioral management problems. [Belford] was also described as the "cut person" because she was good at cutting pieces of wood for framing. Sergeant Kamelamela testified that workline inmates are given independence, a practice consistent with the Department of Public Safety policies and procedures. The credible evidence presented by the State showed that the supervision of [Belford] and the inmates was proper and appropriate, and [Belford] did not present any credible evidence to rebut this.

6.    The State did not breach its duty to act reasonably in training [Belford] and the inmates in the building maintenance class to prevent injury to them. Ms. Okumura testified that [Kurosawa] discussed safety a lot and he was very concerned that the inmates were partnered up and safe. He instructed the inmates that when using the circular saw, they should only cut wood on the table or on the grass. [Kurosawa] specifically told the class not to cut on the rolling tool box because it was slippery on the top. He told the class that they should cut on a flat surface. The credible evidence presented by the State showed that the training was proper and appropriate and [Belford] did not present any credible evidence to rebut this.

Belford argues that the weight of the evidence at trial established that: (1) she was a novice, with no experience in the use of a circular saw; (2) she did not recognize that the manner in which she was using the saw was improper or dangerous; (3) it was reasonably foreseeable that she would injure herself if unsupervised; and (4) if Kurosawa had been supervising her, he would have intervened to prevent Belford's improper use of the saw.

There is, however, substantial evidence in the record that supports the Circuit Court's mixed findings and conclusions. Kurosawa testified that safety, and the importance of safety, was

part of the curriculum in the building maintenance course Kurosawa taught to eight student inmates, including Belford. Safety, as it relates to OSHA training, was part of the curriculum and the course lasted roughly 225 hours.  Kurosawa described a "hands-on tutorial on how to use power tools, the safety of the power tools and just basic manipulation of the tool itself[,]" which was taught in the first week of class.  Each student, including Belford, worked individually with Kurosawa, and was required to demonstrate how to use these tools in front of Kurosawa, and to explain "exactly what each function was of the tool[,]" including the circular saw.  With respect to the circular saw, Kurosawa testified concerning his training of safe techniques for use of the saw.  Kurosawa specifically testified that he "told the [inmates], whenever you cut, to be cutting on the outside picnic table[.]" Belford testified that Kurosawa taught her that when using the circular saw, she should use it either on the picnic table or on the ground.  Kurosawa further testified that Belford was his "cut person," and that Belford had demonstrated "proficien[cy] in the use of the circular saw." Kurosawa also testified that he had only left Belford directly unsupervised for five minutes at the time of the incident, and that Kurosawa generally supervised the inmates at all times, except "on occasion" as, for example, when he needed to accompany inmates to the bathroom.

Kurosawa's testimony was corroborated by the safety and health sergeant, operations sergeant, and workline coordinator at the Women's Community Correctional Center (**WCCC**) Ashley

Keliipopohaku Kamelamela (known as **Sgt. Haku**), as well as Belford's classmate, Chanda Okumura (**Okumura**).  Sgt. Haku testified that Kurosawa described Belford as "excell[ing] in [the] class."  Sgt. Haku also said that she did not recall seeing anything unsafe or that she recognized as unsafe, and that if she had, she would have addressed it by taking "corrective measurements."  Sgt. Haku further testified that she never saw Kurosawa teaching in a way that concerned her regarding safety.  Additionally, Sgt. Haku testified that, once inmates demonstrate competency, they are allowed "some independence," which is "consistent with the policies and procedures of the Department of Public Safety."

Okumura testified that Kurosawa discussed safety matters with the class, including safety guidelines regarding using power tools and "how to be safe when using power tools[.]"  She said that Kurosawa talked a lot about safety when using power tools.  Okumura further testified that "[Kurosawa] was very concerned about teaching [the inmates] the right way and making sure that we were partnered up and safe with what we did, because accidents could happen.  He didn't want nobody getting hurt."  Moreover, Okumura testified, *inter alia,* that, "[Kurosawa] would show us how to use the circular saw," the different parts, how to take it apart, how to lock it, and "he didn't just let us jump on the saw."  Okumura explained that Kurosawa watched everyone take turns cutting with the circular saw, and that the purpose of doing so was for each of the inmates to learn safety, and how to use the saw safely.  Finally, Okumura testified that the inmates

were instructed "only to cut on the table, or . . . the ground on the grass[,]" and that they were told this "multiple times." Okumura clarified, with respect to cutting with the circular saw on the toolbox (which Belford did at the time of her injury), that Kurosawa "specifically told us not to cut on the rolling toolbox because it was slippery on the top."

In sum, substantial evidence in the record – including but not limited to the above – supports that the State understood the potential danger, and took myriad measures to attenuate the foreseeable risks of harm.  Indeed, much of the aforementioned testimony was corroborated by Belford herself, who testified that she understood that she should "adjust the [circular saw's] blade so that it goes through the board, [so that] it doesn't stick out too far," and that she knew that, when cutting with a saw, that it should be placed on a secure surface - all of which she learned from Kurosawa.  Belford also testified that Kurosawa "was concerned about everybody's safety[.]"

Notwithstanding some contrary evidence in the record, "[the] appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." Porter v. Hu, 116 Hawaiʻi 42, 59-60, 169 P.3d 994, 1011-12 (App. 2007) (quoting State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996)).  In light of the substantial evidence supporting the Circuit Court's findings and conclusions, including the above, this court is not left with a definite and

firm conviction that a mistake has been made.[2]  Therefore, we cannot conclude that the Circuit Court clearly erred with respect to COLs 5 and 6.  See Doe Parents No. 1 v. State of Haw., Dep't of Educ., 100 Hawaiʻi 34, 57-58, 58 P.3d 545, 568-69 (2002) (describing standards applicable to our review).  We conclude that the Circuit Court did not clearly err in its findings and conclusions that the State did not breach its duty to exercise reasonable care with respect to, *inter alia*, the training and supervision of Belford here.

(5)  Belford argues that the Circuit Court clearly erred in finding that her injuries were not legally caused by the State.  Belford points to Knodle v. Waikiki Gateway Hotel Inc., 69 Haw. 376, 383, 742 P.2d 377, 385 (1987), and Haworth v. State, 60 Haw. 557, 566, 592 P.2d 820, 825-26 (1979), to support her argument that because the State breached its duty to conform to the standard of care that the law requires, the State is responsible for Belford's injury.  As we have concluded that the State did not breach its duty to exercise reasonable care, we conclude that this argument is without merit.

(6)  Belford argues that the Circuit Court abused its discretion when it awarded costs to the State, as prevailing party, due to Belford's indigency.  Belford's August 6, 2020

---

[2]     Belford argues, in part, that the Circuit Court clearly erred in COL 5 because whether an inmate needs constant supervision with respect to behavioral management problems is not dispositive of the issue of the supervision necessary with respect to the operation of a circular saw.  While this proposition is correct - that supervision for behavioral management was not a determinative issue - this was merely one aspect of the Circuit Court's findings and conclusions, which as a whole support the conclusion that State did not breach its duty to exercise reasonable care and supervision under the circumstances.

Motion to Review and Disallow Costs was based solely on a declaration of counsel claiming that at the time Belford was injured and during the course of the trial, Belford "was incarcerated and had no earnings, income, or assets of any significant value."  Thus, "as a matter of fairness and equity," Belford asked that the Clerk's Taxation of Costs be vacated and disallowed.  In opposition, the State argued that Belford offered no evidence of her current financial situation, no documentary support for a claim of inability to pay costs, and is relying on only the "self-serving hearsay statements of her attorney."  In the Order re Costs, the Circuit Court acknowledged that indigency may be a factor in awarding costs, but found that Belford failed to present credible evidence of her current financial condition and inability to pay the costs.  On this record, we cannot conclude that the Circuit Court abused its discretion in entering the Order re Costs.  See Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(d)(1);[3] Pulawa v. GTE Hawaiian Tel, 112 Hawaiʻi 3, 22, 143 P.3d 1205, 1224 (2006); Wong v. Takeuchi, 88 Hawaiʻi 46, 52, 961 P.2d 611, 617 (1998).

---

[3]     HRCP Rule 54(d)(1) provides:

**Rule 54.**                **JUDGMENTS; COSTS; ATTORNEYS' FEES**
          . . . .

          **(d) Costs; attorneys' fees.**
          (1) COSTS OTHER THAN ATTORNEYS' FEES.  Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law.  Costs may be taxed by the clerk on 48 hours' notice.  On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

For these reasons, the Circuit Court's January 5, 2021 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, December 17, 2024.

On the briefs:

Eric A. Seitz,
Della A. Belatti,
Gina Szeto-Wong,
Jonathan M.F. Loo,
Kevin A. Yolken,
for Plaintiff-Appellant.

Marie Manuele Gavigan,
Corinne J. Carson,
Deputy Attorneys General,
Department of the Attorney General,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge